UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

RAYNALDO MARKEITH SAMPY, JR.

        Plaintiff,

vs.                                                             CASE NO. 6:19-CV-580

JONATHAN PRICE RABB, BRANDON
LAMAR DUGAS, IAN JAMES JOURNET,
SEGUS RAMON JOLIVETTE, MICHAEL
NICHOLAS DARBONNE, ASHER REAUX,
JORDAN KAMAL COLLA, LAFAYETTE CITY
PARISH CONSOLIDATED GOVERNMENT, and
LAFAYETTE PARISH COMMUNICATIONS DISTRICT

        Defendants.

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

Janika D. Polk, T.A. (La. Bar. No. 27608)
Lee B. Ziffer (La. Bar. No. 32783)
Marcus B. Hunter (La. Bar No. 35177)
KUCHLER POLK WEINER, LLC
1615 Poydras Street, Suite 1300
New Orleans, Louisiana 70112
Telephone: (504) 592-0691
Facsimile: (504) 592-0696
jpolk@kuchlerpolk.com
lziffer@kuchlerpolk.com
mhunter@kuchlerpolk.com

Marques S. Tracy (*pro hac vice*)
Linda H. Martin (*pro hac vice*)
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
Marques.Tracy@freshfields.com
Linda.Martin@freshfields.com

Nora Ahmed (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
OF LOUISIANA
P.O. Box 56157
New Orleans, Louisiana 70156
Telephone: (917) 842-3902
Nahmed@laaclu.org

***Attorneys for Plaintiff Raynaldo Markeith
Sampy, Jr.***

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ........................................................................................... 5

ARGUMENT .............................................................................................................. 10

   I.   Mr. Sampy's Claims Are Not Barred ................................................................ 10

      A.   Mr. Sampy's Excessive Force Claims Are Not Barred by Heck ................................ 11

      B.   Mr. Sampy's Retaliation Claim Is Not Barred by Heck or Precluded by Graham ........ 14

      C.   Mr. Sampy's IIED Claim Is Not Barred by Heck ................................................. 15

   II.   Mr. Sampy Has Stated a Claim for Excessive Force ...................................... 15

      A.   Mr. Sampy Adequately Alleges an Injury that Resulted Directly and Only
          from the Use of Defendants' Excessive Force ................................................ 16

      B.   Mr. Sampy Adequately Alleges the Force Used Was Objectively Unreasonable ........ 17

   III.   Mr. Sampy Has Stated a Claim for Retaliation ................................................. 21

   IV.   Mr. Sampy Has Stated a Claim for Intentional Infliction of Emotional Distress ............ 24

   V.   Defendant Officers Are Not Entitled to Qualified Immunity ........................................... 27

   VI.   Mr. Sampy Has Stated a Claim for Bystander Liability .................................................. 30

   VII.   Mr. Sampy Has Stated a Claim for Vicarious Liability Against LCG ............................ 30

   CONCLUSION ....................................................................................................... 33

**TABLE OF AUTHORITIES**

**Cases**                                                              **Page(s)**

*Abdullahi v. City of Madison,*
423 F.3d 763 (7th Cir. 2005) ...............................................................20

*Alexander v. City of Round Rock,*
854 F.3d 298 (5th Cir. 2017) ..............................................16, 20, 29

*Anderson v. Valdez,*
845 F. 3d 580 (5th Cir. 2016) ..............................................................27

*Arizona v. Johnson,*
555 U.S. 323 (2009)..............................................................................20

*Arnold v. Town of Slaughter,*
100 F. App'x 321 (5th Cir. 2004) ........................................................13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................................10

*Aswell v. Culpepper,*
2015 U.S. Dist. LEXIS 48177 (E.D. La. Apr. 13, 2015).....................13

*Ballard v. Burton,*
444 F.3d 391 (5th Cir. 2006) ...............................................................11

*Batyukova v. Doege*
994 F.3d 717, 730 (5th Cir. 2021) .......................................................15

*Blimline v. Thirty Unknown Employees of the SEC,*
757 F. App'x 299 (5th Cir. 2018) ........................................................15

*Bramlett v. Buell,*
2004 WL 2988486 (E.D. La. Dec. 9, 2004).........................................12

*Braud v. Painter,*
730 F. Supp. 1 (M.D. La. 1990)...........................................................32

*Brooks v. City of W. Point,*
639 F. App'x 986 (5th Cir. 2016) ........................................................25

*Broussard v. Kowalski,*
2007 WL 1461023 (E.D. La. May 15, 2007)........................................14

*Brown v. Lynch,*
524 F. App'x 69 (5th Cir. 2013) ..........................................................16

*Bush v. Strain*,
513 F.3d 492 (5th Cir. 2008) ................................................................. *passim*

*Callaway v. Travis County*,
2016 WL 4371943 (W.D. Tex. July 28, 2016) .......................................... 17

*Collier v. Montgomery*,
569 F.3d 214 (5th Cir. 2009) ................................................................... 27

*Cooper v. Brown*,
844 F.3d 517 (5th Cir. 2016) ................................................................... 18

*Curran v. Aleshire*,
67 F. Supp. 3d 741 (E.D. La. 2014) ........................................... *passim*

*Darden v. City of Fort Worth*,
880 F.3d 722 (5th Cir. 2018) ............................................................ 18, 29

*Day v. City of Baton Rouge*,
2020 U.S. Dist. LEXIS 222317 (M.D. La. Nov. 30, 2020) ...................... 27

*Deshotels v. Norsworthy*,
721 F. Supp. 2d 525 (W.D. La. 2010) ...................................................... 32

*Deville v. Marcantel*,
567 F.3d 156 (5th Cir. 2009) ............................................................. 19, 28

*Durant v. Gretna City*,
2020 U.S. Dist. LEXIS 8422 (E.D. La. Jan. 17, 2020) ............................ 17

*Faucheaux v. Terrebonne Consol. Gov't*,
615 So. 2d 289 (La. 1993) ...................................................................... 31

*Flores v. City of Palacios*,
381 F.3d 391 (5th Cir. 2004) ................................................................... 15

*Gibson v. Gusman*,
2012 WL 1565334 (E.D. La. May 1, 2012) ............................................. 21

*Goode v. Baggett*,
811 F. App'x 227 (5th Cir. 2020) ............................................................ 18

*Goodson v. City of Corpus Christi*,
202 F.3d 730 (5th Cir. 2000) .......................................................... 15, 28, 29

*Graham v. Connor*,
490 U.S. 386 (1989) ................................................................................ 17

*Gray v. Jefferson Parish*,
  2006 WL 8456265 (E.D. La. July 5, 2006) ..........................................................25

*Hale v. Townley*,
  45 F.3d 914 (5th Cir. 1995) ...............................................................................30

*Hall v. St. Helena Parish Sheriff's Dep't*,
  668 F. Supp. 535 (M.D. La. 1987).....................................................................21

*Hanks v. Rogers*,
  853 F.3d 738 (5th Cir. 2017) ........................................................................20, 28

*Harrington v. State Farm Fire & Cas. Co.*,
  563 F.3d 141 (5th Cir. 2009) ..............................................................................10

*Heck v. Humphrey*
  512 U.S. 477 (1994).............................................................................................2

*Hines v. Alldredge*,
  783 F.3d 197 (5th Cir. 2015) ..............................................................................10

*Houston v. Hill*,
  482 U.S. 451 (1987).............................................................................................23

*Howard v. Del Castillo*,
  2001 WL 1090797 (E.D. La. Sept. 17, 2001) ....................................................12

*Hudson v. Hughes*,
  98 F.3d 868 (5th Cir. 1996) ................................................................................13

*Joseph on behalf of Estate of Joseph v. Bartlett*,
  981 F.3d 319 (5th Cir. 2020) .........................................................................29, 30

*Kador v. City of New Roads*,
  2011 WL 1326641 (M.D. La. Apr. 5, 2011).......................................................27

*Keaton v. Fairchild*,
  2013 WL 1195629 (E.D. Tex. Jan. 31, 2013) .....................................................18

*Keenan v. Tejeda*,
  290 F.3d 252 (5th Cir. 2002) .....................................................................22, 23, 29

*Keller v. City of Plaquemine*,
  700 So. 2d 1285 (La. App. 1 Cir. 1997) ............................................................31

*Kyle v. City of New Orleans*,
  353 So. 2d 969 (La. 1977) ..................................................................................31

*LaBauve v. State*,
618 So. 2d 1187 (La. App. Ct. 1993).......................................................32

*Lackey v. Salazar*,
2018 WL 3734055 (N.D. Tex. July 17, 2018) ...............................18, 20

*Lewis v. Goodie*,
798 F. Supp. 382 (W.D. La. 1991).......................................................32

*Loupe v. O'Bannon*,
2018 WL 343850 (M.D. La. Jan. 8, 2018).............................................25

*Edmond ex rel. M.B. v. Lafayette Consol. Gov't*,
2018 U.S. Dist. LEXIS 3865 (W.D. La. Jan. 9, 2018).........................27

*Magee v. Reed*,
2017 WL 930650 (E.D. La. Mar. 9, 2017) .....................................11, 12

*Magee v. Reed*,
912 F.3d 820 (5th Cir. 2019) ................................................................14

*Mart v. Hill*,
505 So. 2d 1120 (La. 1987) ..................................................................31

*Maryland v. Wilson*,
519 U.S. 408 (1997)...............................................................................20

*McCue v. City of Bangor*,
838 F.3d 55 (1st Cir. 2016)...................................................................20

*Newman v. Guedry*,
703 F.3d 757 (5th Cir. 2012) ..........................................................18, 28

*Nieves v. Bartlett*
139 S. Ct. 1715 (2019)...........................................................................22

*Patton v. Self*,
952 So. 3d 874 (La. 2007) .....................................................................32

*Pena v. City of Rio Grande City*,
816 F. App'x 966 (5th Cir. 2020) .........................................................18

*Petta v. Rivera*,
143 F.3d 895 (5th Cir. 1998) ................................................................21

*Poole v. City of Shreveport*,
691 F.3d 624 (5th Cir. 2012) ................................................................29

*Pratt v. Giroir*,
    2008 WL 975052 (E.D. La. Apr. 8, 2008) ...........................................................12

*Ramirez v. Martinez*,
    716 F.3d 369 (5th Cir. 2013) ...........................................................................28

*Reyes v. Bridgewater*,
    362 F. App'x 403 (5th Cir. 2010) .....................................................................18

*Robinson v. Lipps*,
    2019 WL 136983 (W.D. La. Jan. 4, 2019) ........................................................11

*Rolf v. City of San Antonio*,
    77 F.3d 823 (5th Cir. 1996) .............................................................................29

*Sam v. Richard*,
    887 F.3d 710 (5th Cir. 2018) ...........................................................................17

*Schmidt v. Texas*,
    2009 WL 7808953 (S.D. Tex. Aug. 17, 2009) ...................................................17

*Sinegal v. Lake Charles Police Dep't*,
    2018 U.S. Dist. LEXIS 220236 (W.D. La. Dec. 27, 2018) .................................27

*Smith v. Hood*,
    900 F.3d 180 (5th Cir. 2018) ...........................................................................10

*St. Cyr v. McDonald*,
    2009 WL 3242551 (M.D. La. 2009) .................................................................11

*Stroik v. Ponseti*,
    699 So. 2d 1072 (La. 1997) .............................................................................31

*Summers v. Hinds Cty., Miss.*,
    508 F. Supp. 3d 124 (S.D. Miss. 2020)............................................................19

*Tennessee v. Garner*,
    471 U.S. 1 (1985)............................................................................................22

*Thomas v. Gulotta*,
    2014 WL 5778390 (M.D. La. Nov. 5, 2014) .....................................................25

*Thomas v. Pohlmann*,
    681 F. App'x 401 (5th Cir. 2017) ................................................................11, 15

*Thurairajah v. City of Fort Smith*,
    925 F.3d 979 (8th Cir. 2019) ...........................................................................23

*Toth v. Calcasieu Parish*,
    2009 U.S. Dist. LEXIS 38482 (W.D. La. May 6, 2009)........................................27

*Trammel v. Fruge*,
    868 F.3d 332 (5th Cir. 2017) ........................................................................18, 29

*U.S. v. Ibarra-Sanchez*,
    199 F.3d 753 (5th Cir. 1999) .................................................................................20

*Weigel v. Broad*,
    544 F.3d 1143 (10th Cir. 2008) ...........................................................................20

*White v. Jackson*,
    2014 WL 99976 (N.D. Tex. Jan. 10, 2014) ...................................................14, 17

*White v. Monsanto Co.*,
    585 So. 2d 1205 (La. 1991) ...................................................................................25

*Williams v. Bramer*,
    180 F.3d 699 (5th Cir. 1999) .................................................................................16

*Williams v. Town of Delhi*,
    2015 WL 868746 (W.D. La. 2015)........................................................................10

*Ybarra v. Davis*,
    489 F. Supp. 3d 624 (W.D. Tex. 2020).........................................................14, 15, 24

## PRELIMINARY STATEMENT

In May 2020, millions of Americans saw painful video footage of a Minneapolis police officer kneeling on the neck of a Black man for nine and a half minutes in the course of an attempted arrest.  That Black man, George Floyd, begged and pleaded with the officer, Derek Chauvin, to get off his neck because he couldn't breathe.  We all watched Mr. Floyd's life slip away as a result of unconscionable police brutality, a scourge in our society that happens far too often.  After Mr. Floyd's death, hundreds of thousands of Americans stood up—notwithstanding a global pandemic ravaging the nation—to proclaim, "Enough!"  Massive protests across the country occurred, with Americans loudly insisting that this sort of police brutality absolutely cannot continue.  Mr. Floyd's name would join a chorus of voices chanting the names of too many others:  Eric Garner, Michael Brown, Akai Gurley, Tamir Rice, Freddie Gray, Philando Castile, Stephon Clark, Botham Jean, Atatiana Jefferson, Breonna Taylor, Ahmaud Arbery, among others.

Two years earlier, Raynaldo Markeith Sampy, Jr. was asleep in his pickup truck in a convenience store parking lot in Lafayette, Louisiana.  Seven police officers arrived at the scene after a 9-1-1 call from a nearby security guard, who inaccurately claimed Mr. Sampy ran into an ice cooler outside the convenience store.  After awaking Mr. Sampy and asking him to retrieve his identification, Defendant Brandon Dugas forcibly yanked Mr. Sampy out of his truck, threw him face down on the concrete, and immediately handcuffed him.  For the next approximately seven minutes, the Defendant officers brutalized Mr. Sampy.  They dragged him across the concrete by his handcuffed arms; they pinned his head to the hood of a police car; and they pulled his legs out from under him, forcing him to fall face first on the concrete.  All the while, they kneeled for extended periods of time on his leg, neck, head, and back.  Mr. Sampy's many protests were met with continued and increased brutality.  As Defendant Dugas explained to Mr. Sampy—as he smashed Mr. Sampy's face against the police car—Mr. Sampy ran into the "wrong fucking crew."

Mr. Sampy was ultimately charged with two misdemeanors: (1) operating while intoxicated, first offense ("OWI"), and (2) simple battery of an officer. At trial, Mr. Sampy was convicted on both counts. He served 15 days of a 125-day sentence under home confinement because the City Court of Lafayette ("City Court") found nothing "so egregious that I would not consider home incarceration under the battery."

While his confinement was brief, Mr. Sampy still bears the physical and emotional pain of that encounter. Mr. Sampy's misdemeanor convictions simply do not justify the egregious conduct of these officers. As the City Court judge explained at Mr. Sampy's trial: "I don't know that we've ever had a situation like this in my twenty something years that we've had to deal with a detention that got out of hand as this one did."

Mr. Sampy brought the instant action to hold those officers sworn to serve and protect him accountable for violating his constitutional and common law rights. In their motion to dismiss, Defendants notably do not dispute the facts as alleged. The fact is, the entire encounter was captured on video, and there can be no dispute about the brutal conduct Mr. Sampy suffered that early morning. Against this backdrop, Defendants offer various flawed legal arguments that boil down to the simple claim that their actions were "reasonable." Not so. Indeed, nothing about the brutality Mr. Sampy endured on May 5, 2018 was reasonable. Defendants' arguments should accordingly be rejected, and their motion to dismiss denied for at least the following reasons:

*First*, Mr. Sampy's misdemeanor convictions for OWI and simple battery do not preclude his claims for excessive force, retaliation, and intentional infliction of emotional distress ("IIED"). The U.S. Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), and its Fifth Circuit progeny make clear that claims of excessive force are not necessarily barred because of a subsequent conviction, including a conviction for battery of a police officer. This is so because

the factual basis for such convictions are temporally and conceptually distinct from the excessive force claims:  the alleged excessive force occurred *after* Mr. Sampy had been restrained and *after* the simple battery had occurred.  Because Mr. Sampy's retaliation and IIED claims arise out of these same excessive force claims, they, too, are not barred by *Heck*.

*Second*, since Mr. Sampy's claims are not procedurally barred, the Court need only determine if Mr. Sampy has sufficiently stated his claims.  That low procedural bar is easily met here.  The well-pleaded allegations in the Second Amended Complaint (the "SAC") demonstrate that Mr. Sampy was seized and that he suffered an injury that resulted directly and only from the use of Defendants' excessive force.  The allegations also support a finding that the force used was objectively unreasonable.  The crimes for which Mr. Sampy was convicted were misdemeanors. Mr. Sampy, a 150-pound man who had just been awakened in his parked (and turned off) truck by seven police officers, posed no immediate threat to the safety of those officers.  Moreover, Mr. Sampy was neither actively resisting arrest nor attempting to evade arrest by fleeing.

*Third*, Mr. Sampy pleaded sufficient facts to support his retaliation claim.  His protest of the officers' brutal conduct was unquestionably protected activity under the First Amendment, and their conduct caused him to suffer multiple injuries that would chill a person of ordinary firmness from continuing to protest.  The increased brutality he faced in response to each protest is sufficient to allege that Defendants' actions were substantially motivated by Mr. Sampy's exercise of constitutionally protected conduct.

*Fourth*, the conduct that Mr. Sampy endured was "extreme and outrageous" under Louisiana law, and he suffered severe emotional distress as a result, including significant PTSD-type symptoms, such as sadness, anxiety, stress, anger, depression, frustration, sleeplessness, nightmares, and flashbacks relating to the police brutality he endured.  The allegations also

sufficiently show that Defendants intended to inflict this severe emotional distress on Mr. Sampy or, at a minimum, knew that severe emotional distress would be certain or substantially certain to result from their conduct.

*Fifth*, the Defendant Officers cannot benefit from the doctrine of qualified immunity.  As discussed below, Mr. Sampy's constitutional rights were clearly violated, and the Defendant Officers' conduct was objectively unreasonable in light of clearly established law.  The Defendant Officers had fair warning of the clearly established limits on the degree of force an officer may use during an arrest.  Similarly, the same officers also would have understood that their actions violated Mr. Sampy's established constitutional right to be free from retaliation for exercising his First Amendment right to free speech.

*Finally*, because Mr. Sampy's constitutional rights were violated, and because there is no dispute that the other officers took no steps to intervene to protect him from the most brutal excessive force of Defendants Asher Reaux and Jonathan Rabb, the other five officers are also liable under the theory of bystander liability.  Moreover, because the Lafayette City Parish Consolidated Government ("LCG") had a duty to protect Mr. Sampy, and because Mr. Sampy's arrest was objectively unreasonable, LCG is vicariously liable to Mr. Sampy for the misconduct of Defendant Officers.

Defendants' misconduct should not be left unanswered.  The law offers a remedy for victims of police misconduct for this very reason.  Mr. Sampy is availing himself of his rights and remedies under the law.  Defendants' motion to dismiss should be denied, and this case should be allowed to proceed to discovery.

## STATEMENT OF FACTS

**Mr. Sampy's Brutal Arrest**

In the early morning of May 5, 2018, Mr. Sampy was peacefully sleeping in his pickup truck in the parking lot of Sid's One Stop. (SAC ¶ 18.) His truck was parked, and the engine was turned off. (*Id.*) A security guard called 9-1-1 to report that a Black male was seated in his truck and "appeared to have run into the ice cooler" located outside the convenience store. (SAC ¶ 19.) Mr. Sampy had not run into the cooler, which had been damaged prior to May 5, 2018. (*Id.*)

Shortly after receiving the security guard's call, the Lafayette Parish Communication District dispatcher directed officers to the scene. (SAC ¶ 20.) Only Defendant Reaux's body camera[1] was activated, even though Lafayette Police Department policy always requires officers to activate their body cameras when interacting with a citizen. (*Id.*) Six other officers—Defendants Rabb, Dugas, Nicholas Darbonne, Segus Jolivette, Jordan Colla, and Ian Journet—all chose not to activate their body cameras. (*Id.*)

Defendant Darbonne woke Mr. Sampy through the already-open truck window. (SAC ¶ 22.) Defendant Darbonne falsely stated that the officers had received a call from the alarm company reporting that the security camera caught Mr. Sampy's truck striking the ice cooler. (*Id.*) Defendant Darbonne proceeded to ask for identification and, uninvited, opened the driver's door to Mr. Sampy's truck. (SAC ¶ 23.) Still disoriented from just having been awakened, Mr. Sampy reached toward his pocket to retrieve his driver's license. (*Id.*) At this point, Defendant Dugas immediately grabbed Mr. Sampy's arm. (*Id.*) He forcibly snatched Mr. Sampy out of his truck—which had been modified to be raised higher off the ground—and performed a straight-arm bar

---

[1] Defendant Reaux's and Officer Mitcham's body camera footage were filed as part of Exhibit B to Defendants' Motion to Dismiss ("MTD").

take-down, throwing Mr. Sampy face down onto the concrete parking lot.  (*Id.*)  Mr. Sampy complained that Defendant Dugas was using unnecessary and excessive force.  (*Id.*)  Nonetheless, instead of deescalating the situation, Defendants Dugas, Reaux, and Colla immediately pulled the prone Mr. Sampy's arms behind his back and handcuffed him.  (*Id.*)  Mr. Sampy remained handcuffed through the remainder of the incident.  (*Id.*)

Mr. Sampy was then dragged by his handcuffed arms along the concrete to a nearby police vehicle.  (SAC ¶ 25.)  Defendant Dugas proceeded to throw the handcuffed Mr. Sampy face down onto the hood of the police car, pinning him onto the car by pressing his hand into Mr. Sampy's neck while Defendant Jolivette held Mr. Sampy's left arm.  (SAC ¶ 26.)  On the body camera recording, Defendant Dugas is heard telling Mr. Sampy that he encountered the "wrong fucking crew," the implication being that Mr. Sampy was unfortunate to have been arrested by these officers because they are a particularly aggressive and violent unit.  (*Id.*)  Indeed, Defendants Dugas and Jolivette both have previously been named defendants in lawsuits alleging misconduct in this District, including for excessive force and IIED.  (SAC ¶ 27.)

At some point while Mr. Sampy was pinned to the hood of the car, he kicked his leg backwards, striking Defendant Rabb's shin.  (SAC ¶ 29.)  Defendant Rabb testified at trial that he suffered no injuries as a result of the kick.  (*Id.*)  This single backwards kick was the basis for the simple battery charge for which Mr. Sampy was convicted.  (*Id.*)

Defendant Rabb then abruptly pulled Mr. Sampy, who weighs approximately 150 pounds, by his legs off the hood of the car.  (SAC ¶ 28.)  Because he was still handcuffed, Mr. Sampy was unable to brace his fall; he landed face first on the concrete.  (*Id.*)  As a result, his chin was lacerated, requiring stitches, and his tooth was chipped.  (*Id.*)  Blood pooled around his head.  (*Id.*)

After his violent landing, Mr. Sampy continued to protest Defendant Rabb's actions.  (SAC ¶ 30.)  Defendant Reaux then pushed Defendant Rabb out of the way in order to mount Mr. Sampy. (*Id.*)  Defendant Reaux placed his full body weight on Mr. Sampy's left knee while Defendant Rabb rested his entire body weight and knee on Mr. Sampy's neck.  (*Id.*)  Screaming in pain, Mr. Sampy repeatedly begged Defendant Rabb to get off him.  (*Id.*)  In response to Mr. Sampy's desperate pleas, Defendant Rabb cruelly moved his knee and weight from Mr. Sampy's neck to his head, further pressing his face into the concrete.  (SAC ¶ 30.)

When a fire truck drove by, Defendant Reaux finally got off Mr. Sampy and started questioning him.  (SAC ¶ 32.)  Defendants Reaux, Darbonne, and Dugas proceeded to search Mr. Sampy's truck.  (*Id.*)  At this point, Defendant Reaux muted his body camera, so he could speak with the other Defendant Officers in private.  (*Id.*)  He did not turn the sound back on again.  (*Id.*)

During the search of Mr. Sampy's truck, Defendant Rabb again mounted Mr. Sampy with his knees in Mr. Sampy's upper back.  (SAC ¶ 33.)  As Mr. Sampy visibly howled in pain and protest, the body camera footage shows Defendant Dugas smiling.  (*Id.*)  None of the other Defendant Officers made any effort to intervene or to calm their colleagues' aggressive and unreasonable actions.  (SAC ¶ 24.)  Other than vociferously complaining about his mistreatment, Mr. Sampy did not actively resist arrest.  (*Id.*)

Finally, nowhere in the audible body camera footage does any officer assert detecting an odor of alcohol from Mr. Sampy or his vehicle.  (SAC ¶ 34.)  Nonetheless, they called DUI officer Robert Mitcham to the scene.  (*Id.*)  Officer Mitcham's body camera footage recorded his initial statement that he perceived no odor of alcohol.  (*Id.*)  Officer Mitcham confirmed his initial statement at trial but added that he subsequently changed his mind about smelling alcohol on Mr. Sampy's breath after speaking with Defendant Officers at the scene.  (*Id.*)  Officer Mitcham also

confirmed there was no alcohol found in Mr. Sampy's car.  (*Id.*)  Several minutes after arriving on

the scene, Officer Mitcham put Mr. Sampy in his car and drove him to the University Hospital &

Clinic for medical treatment.  (SAC ¶ 35.)  Once at the hospital—to conceal the fact that Defendant

Officers had caused Mr. Sampy's injuries—Officer Mitcham offered a fabricated story, claiming

to hospital staff that he found Mr. Sampy in this condition in the midst of "a yelling argument with

a friend."  (*Id.*)

## Mr. Sampy's Convictions and Subsequent Appeal

After he was discharged from the hospital, Mr. Sampy was charged with two

misdemeanors:  OWI (first offense) and simple battery of a police officer.  (SAC ¶ 36.)  He was

convicted on both counts in September 2019 after a bench trial and was sentenced to 125 days with

110 days of the sentence suspended.  (*Id.*)  The City Court ordered Mr. Sampy to serve his sentence

under home confinement, finding nothing "so egregious that I would not consider home

incarceration under the battery."  (*Id.*)  The City Court added, "I don't know that we've ever had

a situation like this in my twenty something years that we've had to deal with a detention that got

out of hand as this one did."  (SAC ¶ 5.)

In January 2020, Mr. Sampy appealed his convictions, which the Louisiana Court of

Appeal, Third Circuit, affirmed on March 6, 2020.  (SAC ¶ 37.)  He applied for a supervisory writ

from the Louisiana Supreme Court, which denied his application on December 8, 2020.  (*Id.*)

## Mr. Sampy's Medical Issues and Emotional Distress

In addition to a lacerated chin, which required stitches, and a chipped tooth, Mr. Sampy

also suffered a herniated disc and a dislocated shoulder, both of which still cause Mr. Sampy pain

and limit his ability to run his own business cleaning roof gutters.  (SAC ¶ 38.)  Mr. Sampy also

lost consciousness for a period of time during the incident.  (*Id.*)  He now suffers from short-term

memory loss as a result of the head injuries he endured when he was repeatedly slammed and pressed into the concrete and the hood of a police vehicle.  (*Id*.)

As if the events of May 5, 2018 weren't enough, several of the officers continued to harass Mr. Sampy after the arrest.  For about a week after the incident, Defendant Dugas regularly pulled up and stopped in front of Mr. Sampy's driveway for no apparent reason.  (SAC ¶ 39.)  In a separate incident, Defendant Reaux pulled up next to Mr. Sampy while he was driving in yet another apparent effort to intimidate him.  (*Id.*)  To this day, Mr. Sampy continues to suffer ongoing emotional distress, with significant PTSD-type symptoms, including sadness, anxiety, stress, anger, depression, frustration, sleeplessness, nightmares and flashbacks relating to the police brutality he endured.  (SAC ¶ 43.)

**The Present Litigation**

Mr. Sampy filed his original complaint on May 4, 2019.  (Dkt. No. 1.)  On June 3, 2019, he moved for leave to file a First Amended Complaint, which sought to clarify that Defendant Officers were being sued solely in their individual capacities, to add an additional Defendant, and to correct certain Louisiana Code citations.  (Dkt. No. 6.)  Defendants did not oppose this motion, which the Court granted and deemed filed on June 4, 2019.  (Dkt. Nos. 7, 8.)

On June 6, 2019, Defendants filed an unopposed motion to stay these proceedings pending the outcome of Mr. Sampy's criminal trial.  (Dkt. No. 10.)  It was granted on June 10, 2019.  (Dkt. No. 12.)  On December 9, 2020, after the Louisiana Supreme Court denied Mr. Sampy's supervisory writ, the parties filed a joint motion to lift the stay (Dkt. No. 14), which this Court granted on December 14, 2020 (Dkt. No. 15).

On February 23, 2021, Mr. Sampy filed a motion for leave to file the SAC.  (Dkt. No. 18.)  Recognizing that certain of Mr. Sampy's claims were likely barred by *Heck*, the proposed SAC

struck most of the claims set forth in the First Amended Complaint, leaving only those that would survive a motion to dismiss; it also modified and clarified certain allegations based on evidence admitted at Mr. Sampy's criminal trial.  (Dkt. No. 18 at 4.)  This Court granted the motion to file the SAC on February 24, 2021 (Dkt. No. 22), which was deemed filed the same day (Dkt. No. 23).

## ARGUMENT

At the pleading stage, courts must accept all well-pleaded facts as true and view them in the light most favorable to plaintiff.  *Hines v. Alldredge*, 783 F.3d 197, 200-01 (5th Cir. 2015).  This requires only that a claim be plausible, not probable.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (internal quotation marks and citations omitted).  Not surprisingly, "[a] motion to dismiss under rule 12(b)(6) is viewed with disfavor and is rarely granted."  *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal citations omitted).

## I.      Mr. Sampy's Claims Are Not Barred

Under the Supreme Court's decision in *Heck* and its Fifth Circuit progeny, a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights unless plaintiff:  (1) demonstrates that the conviction or sentence has in some way been reversed or invalidated; or (2) can show that the alleged violation and the underlying conviction are separable and conceptually distinct.  *Williams v. Town of Delhi*, 2015 WL 868746, at *3 (W.D. La. 2015) (citing *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008)).  "[I]f the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed in the absence of some other bar to the suit."  *Smith v. Hood*, 900 F.3d 180, 185 (5th Cir. 2018) (quoting *Heck*, 512 U.S. at 487).

A.     Mr. Sampy's Excessive Force Claims Are Not Barred by *Heck*

Courts in the Fifth Circuit have, on numerous occasions, held that excessive force claims are not necessarily barred by *Heck* and often deny motions to dismiss on *Heck* grounds, including where the underlying convictions are for battery or other similar crimes committed against police officers.[2]  The inquiry as to whether an excessive force claim is barred under *Heck* is "analytical and fact-intensive" and depends upon whether "the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim."  *Bush*, 513 F.3d at 497-98.

In this case, after Mr. Sampy was awakened by police, he was yanked out of his truck, slammed on the pavement, and immediately placed in handcuffs.  He was then dragged to a police vehicle, where he was pinned to the hood of the car by Defendant Dugas, who pressed his hand into Mr. Sampy's neck while Defendant Jolivette held Mr. Sampy's arm.  (SAC ¶ 26.)  The simple battery for which Mr. Sampy was convicted—a backwards kick to Defendant Rabb's shin—occurred while Mr. Sampy was pinned to the hood of the car.  (SAC ¶ 29.)  Mr. Sampy was then pulled by his legs out of the hands of the restraining officers by Defendant Rabb, causing Mr. Sampy to land on the concrete parking lot face first, unable to brace his fall with his hands cuffed behind his back.  (SAC ¶ 28.)  Defendant Rabb then kneeled on Mr. Sampy's neck while Defendant

---

[2] *See, e.g.*, *Thomas v. Pohlmann*, 681 F. App'x 401, 406-08 (5th Cir. 2017) (excessive force claims not barred where plaintiff convicted of resisting an officer and disturbing the peace); *Curran v. Aleshire*, 67 F. Supp. 3d 741, 748-50 (E.D. La. 2014) (excessive force claims not barred where there was a factual dispute regarding the timing of the battery and the use of force), *aff'd*, 800 F.3d 656 (5th Cir. 2015); *Bush*, 513 F.3d at 498 (excessive force claims not barred where plaintiff convicted of resisting arrest); *Ballard v. Burton*, 444 F.3d 391, 400-01 (5th Cir. 2006) (excessive force claims not barred where plaintiff convicted of simple assault on law enforcement officer); *Magee v. Reed*, 2017 WL 930650, at *9-12 (E.D. La. Mar. 9, 2017) (excessive force claims not barred where plaintiff convicted of resisting arrest), *rev'd on other grounds*, 912 F.3d 820 (5th Cir. 2019); *Robinson v. Lipps*, 2019 WL 136983, at *4 (W.D. La. Jan. 4, 2019) (denying motion to dismiss excessive force claims where plaintiff convicted of resisting arrest); *St. Cyr v. McDonald*, 2009 WL 3242551, at *3 (M.D. La. 2009) (same).

11

Reaux mounted his body weight on Mr. Sampy's left knee.  (SAC ¶ 30.)  Mr. Sampy screamed in pain, repeatedly begging Defendant Rabb to get off his neck.  (*Id*.)  Defendant Rabb moved his knee from Mr. Sampy's neck to Mr. Sampy's head, pressing his head and face further into the concrete.  (*Id*.)  Defendants Rabb and Reaux briefly got off Mr. Sampy, but he remained on the ground. (SAC ¶¶ 32, 33.)  A couple of minutes later, Defendant Rabb mounted Mr. Sampy again with his knees planted in his upper back. (SAC ¶ 33.)  Several minutes after that, Mr. Sampy was finally put into a police vehicle and taken to the hospital for medical treatment. (SAC ¶ 35.)

Because the officers employed excessive force *after* Mr. Sampy was handcuffed and *after* the simple battery for which Mr. Sampy was convicted, a judgment in Mr. Sampy's favor on his excessive force claims would not serve to imply that his simple battery conviction is invalid.  *See, e.g.*, *Bush*, 513 F.3d at 499 & n.18 (excessive force claims not barred where plaintiff adequately pled that conduct occurred "after she was restrained"); *Curran*, 67 F. Supp. 3d at 748-50 (excessive force claims not barred where there was a factual dispute regarding the timing of the battery and the use of force); *Magee*, 2017 WL 930650, at *8 (excessive force claim would not be barred if tasing occurred after plaintiff was handcuffed); *Pratt v. Giroir*, 2008 WL 975052, at *6 (E.D. La. Apr. 8, 2008) ("Since the Court cannot rule out the possibility that excessive force was used after Pratt's battery on the officers had been completed and when she was no longer resisting them, Defendants' motion to dismiss is denied.").[3]

---

[3] *See also Bramlett v. Buell*, 2004 WL 2988486, at *4 (E.D. La. Dec. 9, 2004) (excessive force claim not barred where officers shot at plaintiff "*after* the aggravated battery against [officer] had been consummated" (emphasis in original)); *Howard v. Del Castillo*, 2001 WL 1090797, at *4 (E.D. La. Sept. 17, 2001) (denying summary judgment because "[a] section 1983 claim that the police used excessive force after Howard's arrest does not necessarily imply the invalidity of Howard's battery conviction because this beating may have occurred after the battery [on the officers] was over.").

Defendants cite to *Hudson* and *Town of Slaughter* to support their *Heck* bar argument, but those cases are distinguishable.   In *Town of Slaughter*, the criminal court found that plaintiff initiated a physical confrontation with police officers.   Significantly, his Section 1983 suit contradicted this finding by arguing that he was attacked for no reason.   *Arnold v. Town of Slaughter*, 100 F. App'x 321, 324 (5th Cir. 2004).  Not so here.  Mr. Sampy does not deny that the battery occurred; he concedes his conviction and that his appeals were denied.  (SAC ¶¶ 4, 36, 37.) Defendants also ignore that, in *Town of Slaughter*, the court suggested that plaintiff's excessive force claims could have survived *Heck*'s bar had plaintiff alleged "that the police used excessive force after he stopped resisting arrest or even that the officers used excessive and unreasonable force to stop his resistance."  100 F. App'x at 324-25.

*Hudson* does not stand for the proposition that excessive force that occurs *after* the crime for which plaintiff has been convicted is barred by *Heck*.  It is true that in *Hudson*, the Fifth Circuit held that *Heck* barred an excessive force claim where plaintiff was convicted of battery of an officer.  *Hudson v. Hughes*, <u>98 F.3d 868, 872-73</u> (5th Cir. 1996).  The court reasoned that, because self-defense is a justification to battery of an officer in Louisiana, a successful Section 1983 suit would mean plaintiff's battery was justified.   *Id.*   However, in the intervening 25 years since *Hudson* was decided, several courts have appropriately distinguished *Hudson* where the excessive force occurred after the battery, as is the case here.  *See, e.g.*, *Curran*, <u>67 F. Supp. 3d at 748-50</u> (finding that conviction for battery of an officer did not bar a Section 1983 suit when the excessive force occurred after the battery); *Aswell v. Culpepper*, <u>2015 U.S. Dist. LEXIS 48177, at *22</u> (E.D. La. Apr. 13, 2015) (distinguishing *Hudson* because plaintiff's claim "that defendants used excessive force when they allegedly beat and kicked him *after* he was handcuffed and non-resistant is factually and conceptually distinct from the conduct that led to his convictions and the force that

13

defendants used to bring [plaintiff] into their custody prior to his handcuffing") (emphasis in original); *see also Broussard v. Kowalski*, 2007 WL 1461023, at *4 (E.D. La. May 15, 2007) ("The Court would be hard pressed to interpret *Heck* and *Hudson* as allowing excess force, possibly punitive in nature, after the occurrence of the crime for which Plaintiff was convicted.").

B.    Mr. Sampy's Retaliation Claim Is Not Barred by *Heck* or Precluded by *Graham*

Mr. Sampy's retaliation claim is also not barred because judgment on that claim "has no bearing on the validity of the underlying convictions." *See Magee v. Reed*, 912 F.3d 820, 822-23 (5th Cir. 2019) (internal quotations and citations omitted).  While courts have dismissed retaliation claims as *Heck*-barred where the alleged retaliatory act was an *unlawful arrest*, *see id.*, the alleged retaliatory act here was not Mr. Sampy's arrest but, rather, the unlawful excessive force (SAC ¶ 70).  *See Ybarra v. Davis*, 489 F. Supp. 3d 624, 632 (W.D. Tex. 2020) (denying motion to dismiss retaliation claim based on excessive force); *White v. Jackson*, 2014 WL 99976, at *11 (N.D. Tex. Jan. 10, 2014) (same).

Defendants also claim that the Supreme Court's decision in *Graham* "necessarily forecloses a 1st Amendment claim for retaliatory use of force."  (MTD at 18.)  This argument relies on a mischaracterization of the holding in *Graham*.  As another district court in the Fifth Circuit explained last year, "*Graham* does not state that a claim based on excessive force may only be brought under the Fourth Amendment," but rather, "a Section 1983 claim requires applying the standard for the constitutional right that has been alleged to be violated."  *Ybarra*, 489 F. Supp. 3d at 630.  In *Ybarra*, defendants made the same argument as Defendants here—which the court rejected—holding that the First Amendment retaliation claim was not precluded.  *Id.* at 632.  The court explained that, consistent with *Graham*, the retaliation claim should be "judged by reference to the specific constitutional standard which governs that right"—the First Amendment—"and

14

*Graham* does not foreclose the possibility that law enforcement's use of force will also violate another specific constitutional right—such as the First Amendment." *Id.* at 630.[4]

      C.    <u>Mr. Sampy's IIED Claim Is Not Barred by *Heck*</u>

Courts in the Fifth Circuit have found that, like excessive force claims, IIED claims are not barred by *Heck* when the IIED claims "have a separate factual basis than that of [plaintiff's] convictions." *Thomas*, 681 F. App'x at 409 (finding IIED claim not barred by *Heck*); *cf. Blimline v. Thirty Unknown Employees of the SEC*, 757 F. App'x 299 (5th Cir. 2018) (reversing dismissal under *Heck* of *Bivens* claim of IIED).

Because Mr. Sampy's IIED claim also stems from Defendants' excessive force (SAC ¶ 85), it is not barred by *Heck* for the reasons discussed above in Section I.A.  *See Thomas*, 681 F. App'x at 409.

## II.    Mr. Sampy Has Stated a Claim for Excessive Force

Since Mr. Sampy's claims are not barred by *Heck*, the Court need only determine whether the SAC adequately alleges facts supporting his claims.  This low pleading bar is easily met.

To state a Section 1983 claim for excessive force, a plaintiff must show that he was seized and that he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, <u>381 F.3d 391, 396</u> (5th Cir. 2004); *Goodson v. City of Corpus Christi*, <u>202 F.3d 730, 740</u> (5th Cir. 2000); *Bush*, <u>513 F.3d at 501</u> ("[A]n injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible—that is, objectively unreasonable

---

[4] Defendants cite *Batyukova v. Doege*, in support of their preclusion argument (MTD at 18), but there the Fifth Circuit made clear it was not addressing the issue of whether *Graham* precludes a First Amendment retaliation claim based on excessive force, "leav[ing] the question for another day because it is not necessary to our resolution of this appeal," <u>994 F.3d 717, 730</u> (5th Cir. 2021).

under the circumstances.").  Mr. Sampy's well-pleaded allegations easily demonstrate that the injuries he suffered resulted directly from Defendants' excessive and unreasonable force.

> A.  <u>Mr. Sampy Adequately Alleges an Injury that Resulted Directly and Only from the Use of Defendants' Excessive Force</u>

The threshold for a cognizable injury is low.  "[A]s long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) (internal quotations omitted).  When officers use an objectively unreasonable level of force, allegations of even a slight or fleeting injury are sufficient to state a claim.  *See, e.g.*, *Williams v. Bramer*, <u>180 F.3d 699, 704</u> (5th Cir. 1999) (when defendant choked plaintiff, "fleeting dizziness, temporary loss of breath and coughing" combined to create a constitutionally cognizable injury because the force was unreasonable).  Unfortunately for Mr. Sampy, the injuries he suffered—which are adequately alleged in the SAC—were more than enough to satisfy this low bar.

Defendants argue that Mr. Sampy does not claim any physical injuries "for the final complained of use of force while he was handcuffed on the ground after being taken off the hood of the police unit." (MTD at 28.)  This argument willfully ignores the numerous alleged significant injuries resulting directly from Defendants' use of force, including a lacerated chin, which required stitches (SAC ¶ 38); a herniated disc and dislocated shoulder, which cause him pain to this day (*id.*); short-term memory loss as a result of head injuries caused by Defendants (*id.*); and mental and emotional distress, with symptoms similar to PTSD (SAC ¶ 43).  These injuries are more than sufficient to establish an injury for purposes of Mr. Sampy's excessive force claim.  *See, e.g.*, *Alexander v. City of Round Rock*, <u>854 F.3d 298, 309</u> (5th Cir. 2017) (finding injuries not *de minimis* where plaintiff alleged he "sustained injuries to his body as a result of th[e] attack, including

injuries to his mouth," as well as "sustained emotional and psychological injuries" because officers pinned him into the concrete and placed a knee on the back of his neck); *Sam v. Richard*, <u>887 F.3d 710, 714</u> (5th Cir. 2018) (holding that when defendants kneed plaintiff, who initially fled before complying, into the ground, causing bruising and bleeding, such injuries were not *de minimis* and could support an excessive force claim); *Durant v. Gretna City*, <u>2020 U.S. Dist. LEXIS 8422</u> (E.D. La. Jan. 17, 2020) (finding defendant's force excessive where plaintiff was not charged with a serious crime and where he suffered bruising, rib soreness and psychological injuries from officers punching him).

    B.   <u>Mr. Sampy Adequately Alleges the Force Used Was Objectively Unreasonable</u>

In determining whether force is objectively unreasonable, courts consider factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, <u>490 U.S. 386, 396</u> (1989). On balance, these factors weigh in favor of finding that Defendants' force was objectively unreasonable.

Mr. Sampy was charged with two misdemeanors: OWI and simple battery of a police officer.[5] Courts in this Circuit have held that driving while intoxicated, an inherently nonviolent offense, weighs against the use of force. *See White*, <u>2014 WL 99976</u>, at *8 (citing *Deville v. Marcantel*, <u>567 F.3d 156, 167</u> (5th Cir. 2009)); *Callaway v. Travis County*, <u>2016 WL 4371943</u>, at *7 (W.D. Tex. July 28, 2016); *Schmidt v. Texas*, <u>2009 WL 7808953</u>, at *11 (S.D. Tex. Aug. 17, 2009). While simple battery of an officer is a more serious offense, "the second and third factors

---

[5] The Fifth Circuit has held that, under the first *Graham* factor, a misdemeanor "is a minor offense militating against the use of force." *Trammel v. Fruge*, <u>868 F.3d 332, 340</u> (5th Cir. 2017); *see also Pena v. City of Rio Grande City*, 816 F. App'x 966, 971 (5th Cir. 2020) (same); *Reyes v. Bridgewater*, 362 F. App'x 403, 407 n.5 (5th Cir. 2010) (same).

from *Graham*, the threat posed and the degree of resistance or flight, must be considered." *Curran*, 67 F. Supp. 3d at 752. Both of those factors weigh heavily in favor of finding that Defendants' use of force was objectively unreasonable.

Mr. Sampy posed no immediate threat to the safety of Defendants. He was found in his truck asleep, was awakened, and was immediately thrown to the ground and handcuffed. (SAC ¶ 23.) The fact that Mr. Sampy was found asleep makes it "questionable whether he could pose an immediate threat to the safety of the officers." *Keaton v. Fairchild*, 2013 WL 1195629, at *14 (E.D. Tex. Jan. 31, 2013); *see also Lackey v. Salazar*, 2018 WL 3734055, at *5 (N.D. Tex. July 17, 2018) (finding no immediate threat to safety where plaintiff was first approached sitting in his car). At no point was Mr. Sampy "thought to be armed, and he was already handcuffed and subdued" when Defendants began using excessive force against him. *Goode v. Baggett*, 811 F. App'x 227, 232 (5th Cir. 2020).[6] Moreover, Mr. Sampy only weighs around 150 pounds and was arrested by seven armed officers. (SAC ¶ 28; MTD Ex. A at 14, 58, 81, 107, 125, 151). Mr. Sampy's "relatively small size, particularly in comparison to that of the [seven] Officers, reinforces" a finding that he posed no immediate threat to anyone's safety. *Goode*, 811 F. App'x at 232 (arrestee weighed approximately 150 pounds and was arrested by five officers). Indeed, the simple battery for which Mr. Sampy was convicted was only a single kick backwards towards Defendant Rabb's shin (SAC ¶ 29), which Defendant Rabb testified caused no injuries (MTD Ex. A at 137). Given the absence of any injuries inflicted by Mr. Sampy, and the fact that he was

---

[6] *See also Darden v. City of Fort Worth*, 880 F.3d 722, 729 (5th Cir. 2018) (finding plaintiff posed no threat to officers when he made no threatening gestures and where officers immediately threw him to ground); *Cooper v. Brown*, 844 F.3d 517, 522-23 (5th Cir. 2016) (finding "[n]o reasonable officer could conclude that [plaintiff] posed an immediate threat" where he was not suspected of violent offense, where he was unarmed, and where officers had called for backup); *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012) (finding that plaintiff posed no threat to officers when he was unarmed and where officers did not warn each other that plaintiff might be armed).

immediately restrained by seven officers, Mr. Sampy posed, at most, "a minimal threat" to Defendant Rabb or anyone else.  *Curran*, 67 F. Supp. 3d at 752 (finding plaintiff, who was convicted of battery of an officer, "posed a minimal threat" where officer was struck by a "single strike" but reported "no pain, injury, or further threat that he experienced").[7]

There is also no evidence that suggests Mr. Sampy made any significant attempt to resist arrest or flee the scene.  In their motion, Defendants suggest Mr. Sampy engaged in various forms of resistance, including "tensing up, using abusive language, not wanting to get up off the ground, and bucking his shoulders" (MTD at 3), but he was never actually charged with resisting arrest (MTD Ex. A at 226.)  In fact, the only finding by the criminal court of any improper resistance by Mr. Sampy was the backwards kick to Defendant Rabb's shin.  (*Id.* at 230.)  Nor did Mr. Sampy make any effort to flee the scene.  When the officers encountered Mr. Sampy, not only was he sleeping, his car was parked, and the engine was off.  (SAC ¶ 18).  Even when a suspect is "in control of the vehicle and its motor was running and its gear in park," the Fifth Circuit has found "no evidence or other indication that" the suspect "would flee or use the vehicle as a weapon." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).  Here, Mr. Sampy's engine was not even on (SAC ¶ 18), making his flight all the more unlikely, *see, e.g.*, *Summers v. Hinds Cty., Miss.*, 508 F. Supp. 3d 124, 135 (S.D. Miss. 2020) (finding that the suspect's car being off militated against the use of force).

Even so, Defendants claim their use of force was not objectively unreasonable because the arresting officers only used "empty hand techniques" and because Mr. Sampy was not tasered or

---

[7] The City Court's own sentence suggests Mr. Sampy was not considered a threat, insisting on home detention because the battery charge was a misdemeanor and because the court did not see anything "in the video so egregious that I would not consider home incarceration under the battery." (MTD Ex. A at 232).  In total, Mr. Sampy served 15 days, under home incarceration, of his 125-day sentence because the remaining 110 days of the sentence were suspended.  (SAC ¶ 4.)

pepper sprayed.  (MTD at 26, 28.)[8]  But that is, thankfully, not the standard.  In fact, the Fifth

Circuit has held that the very same open hand techniques used against Mr. Sampy are, in fact,

objectively unreasonable.[9]  In *Alexander v. City of Round Rock*, the Fifth Circuit found that

plaintiff's excessive force claim was sufficient to survive a motion to dismiss where arresting

officers had "mashed" his face "into the concrete," pressed a "boot or knee on the back of his

neck," and "manipulated his limbs and put pressure on his torso, neck, and head."  854 F.3d at

309.  The court found the techniques objectively unreasonable because there was no indication

plaintiff posed any risk of harm to the officers or any flight risk.  *Id.*  The court added that plaintiff's

refusal to exit his vehicle may have "warranted physical removal from the car, but it did not warrant

throwing [plaintiff] onto the ground, kneeing him in the back, and pushing his face into the

concrete."  *Id.*  As the court explained, "[t]he officers' use of force once [plaintiff] was safely

removed from the vehicle was not objectively reasonable."  *Id.*; *see also Lackey*, 2018 WL

3734055, at *5 (finding actions objectively unreasonable where plaintiff "merely questioned why

he had to get out of his car" and "Defendants immediately attempted to forcibly remove Plaintiff

from his car, placing him in a chokehold and twisting and pulling his neck," and plaintiff "was

already handcuffed and not resisting Defendants when they slammed his head into the hood of the

police car"); *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (finding it clearly established

---

[8] Defendants also rely on cases that are irrelevant to this suit, including criminal appeals of motions to suppress evidence, *see, e.g.*, *Maryland v. Wilson*, 519 U.S. 408 (1997); *U.S. v. Ibarra-Sanchez*, 199 F.3d 753 (5th Cir. 1999); *Arizona v. Johnson*, 555 U.S. 323 (2009)), where the question is one of reasonable suspicion and probable cause, not the nature of excessive force.

[9] There is broad agreement among appellate courts that "empty hand techniques" can be excessive. *See, e.g.*, *McCue v. City of Bangor*, 838 F.3d 55, 64 (1st Cir. 2016) (holding "that exerting significant, continued force on a person's back while that person is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force"); *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008) (same); *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005) (kneeling on a prone suspect's back who posed no serious threat would amount to excessive force if proven at trial).

"that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation.").[10]

## III.   Mr. Sampy Has Stated a Claim for Retaliation

The excessive force used by Defendants not only violated Mr. Sampy's Fourth Amendment rights, it also violated his First Amendment rights by serving as a retaliatory act in response to his constitutionally protected speech protesting his mistreatment.   A Section 1983 retaliation claim requires that "(1) [plaintiffs] were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were

---

[10] In addition to alleging a violation of his Fourth Amendment rights, Mr. Sampy also asserts an excessive force claim under the Fourteenth Amendment.   (SAC ¶¶ 44-63.)   Defendants concede that a Fourteenth Amendment violation will lie if the actions taken "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense," adding that "[o]nly a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience."   (MTD at 22 (emphasis and citations omitted).)   They claim, however, that Mr. Sampy's allegations simply "do not rise to the required 'shock the conscience' level."   (*Id.* at 23.)   This conclusory argument ignores the well-pleaded allegations, which demonstrate that Defendants' actions—including repeatedly throwing an already-handcuffed Mr. Sampy on the ground, driving their knees into his back, neck, and head, while warning him that he ran into the "wrong fucking crew"—clearly "caused [Mr. Sampy] injury, were grossly disproportionate to the need for action under the circumstances and were inspired by malice rather than merely careless or unwise excess or zeal so that it amounted to an abuse of official power."   *Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir. 1998); *see also Gibson v. Gusman*, 2012 WL 1565334, at *2 (E.D. La. May 1, 2012) (finding that "allegation of three minutes of being kicked with steel-toed shoes and punched even after the plaintiff was subdued for his belligerency" were sufficient to state a claim "for actions that were malicious, shocked the conscience, and were grossly disproportionate to the need to maintain order"); *Hall v. St. Helena Parish Sheriff's Dep't*, 668 F. Supp. 535, 539 (M.D. La. 1987) (finding Fourteenth Amendment violation, noting that "[t]o attack a peacefully secured arrested person is unconscionable").

substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

First, Mr. Sampy was engaged in constitutionally protected activity:  his First Amendment right to protest the actions taken against him.[11]  Defendants claim that the SAC "fail[s] to point out what statements [Mr. Sampy] claims were made that resulted in a particular use of force upon his person, which caused him a specific injury."  (MTD at 19.)  This ignores Mr. Sampy's numerous statements of protestation.  In Defendant Reaux's body camera footage (MTD Ex. B) at 1:10, Mr. Sampy said, "did you really fucking just slam my head into the fucking ground dude are you fucking serious? Fucking bitch."  He repeated that epithet at 1:23 and 1:32.  At 1:53, Mr. Sampy referred to Defendant Reaux as a "motherfucker."  At 2:00, he asked Defendant Dugas to "get the fuck off of me dude" and, when pinned to the police car hood, stated "stop fucking playing with me you fucking bitch."  After this statement, three officers slammed Mr. Sampy's torso against the hood of a police cruiser.  Mr. Sampy is then dropped to the ground face first (2:23). He asks the officers, "did you really fucking do that, dude?"  Immediately after Mr. Sampy's question, Defendant Rabb mounted his back (at 2:31) and placed his knee on Mr. Sampy's neck (2:37), prompting Mr. Sampy to ask "what the fuck is wrong with you?"  Mr. Sampy repeatedly pleaded with Defendant Rabb to get his knee off his neck, a request that was met only with further abuse.

---

[11] The defense relies heavily on *Nieves v. Bartlett,* where the Supreme Court held the absence of probable cause will "generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite."  139 S. Ct. 1715, 1724 (2019).  Defendants misunderstand Mr. Sampy's suit, which does not contend that he was arrested as a result of his protected speech, but that his protected speech was a substantial motivation for Defendants' excessive force.  The existence of probable cause is tangential to Mr. Sampy's claim of excessive force.  *See Tennessee v. Garner*, 471 U.S. 1 (1985) (finding a police officer's use of deadly force on a fleeing suspect excessive despite the existence of probable cause).

While Defendants may not like it, it is settled law that the First Amendment protects the right to swear at law enforcement. *See, e.g.*, *Houston v. Hill*, 482 U.S. 451, 462-63 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 985 (8th Cir. 2019) (holding that the First Amendment protects yelling "f**k you" at law enforcement).  Mr. Sampy's protests were well within his First Amendment rights, and his words, although profanity laced, are protected by the U.S. Constitution.

Second, Defendants' assault on Mr. Sampy caused injuries to him that would "chill a person of ordinary firmness from continuing to engage in" First Amendment protected speech. *Keenan*, 290 F.3d at 258.  Defendants' brutal actions herniated Mr. Sampy's spinal disc and dislocated his shoulder (SAC ¶ 38), chipped Mr. Sampy's tooth, lacerated his chin, and pinned him to the ground in a pool of his own blood (SAC ¶¶ 28, 30).  Defendants also repeatedly inflicted head trauma to Mr. Sampy, causing him to suffer short-term memory loss.  (SAC ¶ 38.)  The Fifth Circuit has held that "[t]he effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Keenan*, 290 F.3d at 259 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).  The significant injuries sustained by Mr. Sampy far exceed the threshold for creating a chilling effect.

Lastly, Mr. Sampy has sufficiently alleged that Defendants' actions were substantially motivated by his protected speech.  Defendants claim that the SAC fails to bridge the "temporal gap between the protected activity on which plaintiff relies and any of the force used in this interaction."  (MTD at 20.)  As discussed above, however, the actions taken by Defendants were

in direct, immediate response to certain epithets directed towards them.  (*See supra* at 22-23.)  For example, in response to Mr. Sampy repeatedly calling the officers a "fucking bitch" or a "mother fucker," three officers slammed Mr. Sampy's torso and head against the hood of the police cruiser.  (*See id.*)  And as soon as Mr. Sampy asked, "did you really fucking do that, dude?" after his feet were pulled out from under him and he fell face first onto the ground, Defendant Rabb mounted his back (at 2:31) and placed his knee on Mr. Sampy's neck (2:37), prompting Mr. Sampy to ask "what the fuck is wrong with you?"  In response, Defendant Rabb continued to drive his body weight into Mr. Sampy's neck and back.  Indeed, Defendants' retaliatory motives were on full display when Mr. Sampy was pinned to the hood of the car, protesting the abuse he was enduring. It was then that Defendant Dugas told Mr. Sampy he had encountered the "wrong fucking crew," the implication being that Mr. Sampy was unlucky to be arrested by these officers because they are a particularly aggressive and violent unit.  (SAC ¶ 26.)  Because Defendants can offer no legitimate non-retaliatory reason for the brutal force used on Mr. Sampy, the SAC adequately alleges that the conduct was substantially motivated by Mr. Sampy's protected speech.  *See Ybarra*, 489 F. Supp. 3d at 633 (finding substantial motivation prong met where there was no non-retaliatory reason to throw plaintiff to the ground); *Brooks v. City of W. Point*, 639 F. App'x 986, 989 (5th Cir. 2016) (finding substantial motivation prong met where plaintiff arrested for cursing at officer).

## IV.    Mr. Sampy Has Stated a Claim for Intentional Infliction of Emotional Distress

In addition to violating Mr. Sampy's federal constitutional rights, Defendants are also liable to Mr. Sampy for IIED.  Under Louisiana law, a claim for IIED requires: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or

24

knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

Defendants do not dispute that the emotional distress suffered by Mr. Sampy was severe. Nor could they. The body camera footage clearly shows Mr. Sampy's obvious emotional distress, desperately pleading with Defendant Rabb to get his knee of Mr. Sampy's neck. (MTD Ex. B; SAC ¶ 30.) The SAC alleges that Mr. Sampy continues to suffer ongoing emotional distress, with significant PTSD-type symptoms, including sadness, anxiety, stress, anger, depression, frustration, sleeplessness, nightmares, and flashbacks of the incident. (SAC ¶ 43.) These forms of emotional distress are sufficiently severe to sustain an IIED claim under Louisiana law. *See, e.g.*, *Gray v. Jefferson Parish*, 2006 WL 8456265, at *2-3 (E.D. La. July 5, 2006) (denying motion to dismiss IIED claim where plaintiff alleged, among other things, anxiety, nightmares, anxiety attacks, inability to sleep, stress, and depression); *see also Loupe v. O'Bannon*, 2018 WL 343850, at *8 (M.D. La. Jan. 8, 2018) (denying summary judgment where plaintiff suffered depression, anxiety, and PTSD).

Nor do Defendants dispute that they desired to inflict severe emotional distress or knew that such distress would be certain or substantially certain. As discussed above, Defendant Dugas made it a point to warn Mr. Sampy that he had encountered the "wrong fucking crew" (SAC ¶ 26); he clearly tried to frighten Mr. Sampy, to let him know that he was going to be the subject of violence, *Thomas v. Gulotta*, 2014 WL 5778390, at *3 (M.D. La. Nov. 5, 2014) (denying motion to dismiss IIED claim where defendant officer threatened plaintiff with violence).[12] In fact, the

---

[12] That only one officer turned on his body camera, and even that body camera was muted for much of the incident, further suggests that these officers knew that what they were doing was wrong—and that they intended to inflict severe distress on Mr. Sampy or that such distress would be certain or substantially certain. (SAC ¶¶ 20, 31-35.)

pattern of intimidation by the officers continued after the incident.   For about a week thereafter, Defendant Dugas would regularly pull up and stop in front of Mr. Sampy's driveway for no apparent reason.  (SAC ¶ 39.)  In a separate incident, Defendant Reaux pulled up next to Mr. Sampy while he was driving in an apparent effort to intimidate him.  (*Id*.)

Instead of addressing the merits of Mr. Sampy's IIED claim, Defendants simply argue that, "[b]ased on the evidence admitted, it is clear that the officers' conduct in this matter was reasonable." (MTD at 33.)  Defendants' conduct was not only objectively unreasonable (*see supra* at 17-21), it was extreme and outrageous.

Mr. Sampy was peacefully sleeping in his truck, with the engine turned off, when he was suddenly awakened by several police officers.  (SAC ¶¶ 18, 21, 22.)  Within seconds of being asked for identification, the officers forcibly removed him, slammed him face-first on the concrete, and immediately handcuffed him.  (SAC ¶ 23.)  Mr. Sampy was then dragged to, and thrown onto the hood of, a nearby police vehicle.  (SAC ¶¶ 25-26.)  Defendant Dugas pinned Mr. Sampy to the car by pressing his hand into the back of his neck, while explaining that Mr. Sampy had encountered the "wrong fucking crew." (SAC ¶ 26.)  After a single kick backwards by Mr. Sampy, Defendant Rabb pulled the handcuffed Mr. Sampy by his legs, causing him to fall from the hood of the car face first onto the concrete.  (SAC ¶ 28.)  Defendant Reaux then placed his entire body weight onto Mr. Sampy's knee while Defendant Rabb did the same to Mr. Sampy's neck.  (SAC ¶ 30.)  Mr. Sampy desperately begged Defendant Rabb to get his knee off Mr. Sampy's neck, but Defendant Rabb responded only by moving his knee to Mr. Sampy's head, further pressing his face into the concrete.  (*Id.*)  At one point, Defendant Rabb briefly got off Mr. Sampy, but made it a point to quickly return, mounting Mr. Sampy again, this time with both of his knees firmly planted in his upper back.  (SAC ¶ 33.)  Defendant Dugas looked on laughing.  (*Id.*)

Courts have found similar conduct to be extreme and outrageous for purposes of an IIED claim. *See, e.g.*, *Day v. City of Baton Rouge*, 2020 U.S. Dist. LEXIS 222317, at * 51-52 (M.D. La. Nov. 30, 2020) (holding that where plaintiff was "forced on to the ground and hit, choked and beaten," such conduct would constitute "extreme and outrageous conduct" because it would "evince wanton and needless force."); *Toth v. Calcasieu Parish*, 2009 U.S. Dist. LEXIS 38482, at *19 (W.D. La. May 6, 2009) (finding that plaintiffs created a genuine issue of material fact as to whether officers' actions were "extreme and outrageous" when officers threw him face down on the ground and weighed him down with their knees).[13]

## V.    Defendant Officers Are Not Entitled to Qualified Immunity

Defendants erroneously claim that they and their actions are immunized by the doctrine of qualified immunity.  (MTD at 23.)  A defendant officer will not be protected by qualified immunity if:  (1) the officer violated a statutory or constitutional right, and (2) that right was clearly established at the time of the alleged conduct.  *Anderson v. Valdez*, 845 F. 3d 580, 599-600 (5th Cir. 2016).  Thus, "a court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).  Second, if a violation has been alleged, the Court must determine "whether [the officer's] actions were objectively reasonable in light of clearly established law at the time of the conduct in question."  *Id.*  Where prior decisions give

---

[13] The cases cited by Defendants are inapposite because they, unlike the case at bar, do not sufficiently allege emotional distress. *See Sinegal v. Lake Charles Police Dep't*, 2018 U.S. Dist. LEXIS 220236 (W.D. La. Dec. 27, 2018) (finding that plaintiff did not allege requisite level of mental anguish, but instead described physical assaults by police); *Kador v. City of New Roads*, 2011 WL 1326641, at *11 (M.D. La. Apr. 5, 2011) (finding allegations only that plaintiff was handcuffed and slammed against a car insufficient to establish that defendants intended to inflict emotional distress or knew it would result), *aff'd sub nom. Francois v. City of New Roads*, 459 F. App'x 475 (5th Cir. 2012); *Edmond ex rel. M.B. v. Lafayette Consol. Gov't*, 2018 U.S. Dist. LEXIS 3865, at *14 (W.D. La. Jan. 9, 2018) (finding plaintiff's alleged mental injuries to be *de minimis*).

reasonable warning that the conduct at issue violated constitutional rights, the law can be clearly established despite notable factual distinctions between precedent and the case before the court. *See Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013).

As discussed above, the SAC clearly alleges facts sufficient to establish constitutional violations. (*See supra* at 15-25.)  Mr. Sampy has adequately alleged claims of excessive force, in violation of his Fourth and Fourteenth Amendment rights (*see supra* at 15-21), and a claim of retaliation, in violation of the First Amendment (*see supra* at 21-25).

In addition to the constitutional violations, Defendants' actions were objectively unreasonable in light of clearly established law.  At the time of Mr. Sampy's arrest, the Defendant Officers had fair warning that the law clearly established limits on the degree of force an officer may use during an arrest.  *See Bush*, 513 F.3d at 502.  The Fifth Circuit has ruled numerous times that the use of force can be excessive or unreasonable where a police officer immediately resorts to physical force—as opposed to continuing negotiations with an individual—even though a suspect did not pose a threat to the officer's safety and where a police officer employs force after a suspect has been subdued.  *See, e.g.*, *Hanks*, 853 F.3d at 748; *Ramirez*, 716 F.3d at 378-79; *Newman*, 703 F.3d at 762-63; *Deville*, 567 F.3d at 167; *Bush*, 513 F.3d at 501-02; *Goodson*, 202 F.3d at 740.

For example, in *Bush v. Strain*, plaintiff was not resisting arrest or attempting to flee when the defendant "officer forcefully slammed her face into a nearby vehicle during her arrest, thereby causing significant injuries."  513 F.3d at 502.  The Fifth Circuit denied qualified immunity, finding that "the test is clear enough that [defendant] should have known that he could not forcefully slam [plaintiff]'s face into a vehicle while she was restrained and subdued."  *Id.* Similarly, in *Trammel v. Fruge*, defendant officers tackled the plaintiff, who was suspected of

public intoxication, even though he offered minimal resistance (pulling away from officers). 868 F.3d at 343. The Fifth Circuit denied qualified immunity, finding that "the law at the time of [plaintiff]'s arrest clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp." *Id.*; *see also Goodson*, 202 F.3d at 740 (denying qualified immunity where defendant officers tackled plaintiff, who was not fleeing, and broke his shoulder). And in *Alexander v. City of Round Rock*, a decision with strikingly similar facts to the present case, the court denied qualified immunity where defendant officers threw plaintiff onto the ground, kneed him in the back, and pushed his face into the concrete, finding that "the officers' use of force was objectively unreasonable." 854 F.3d at 309; *see also Darden*, 880 F.3d at 733 (denying qualified immunity where defendants choked, punched, and kicked plaintiff and forced him onto his stomach pushing his face into the floor); *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 342 (5th Cir. 2020) (denying qualified immunity where defendants repeatedly struck, punched, kicked, and tased plaintiff while plaintiff was facedown in the fetal position).[14]

Neither are Defendants entitled to qualified immunity for the retaliation claim. The Fifth Circuit has made clear that "government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable." *Keenan*, 290 F.3d at 261; *see also Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996) (denying qualified immunity, adding that "reasonable public officials would have understood that their actions violated [plaintiff's] clearly

---

[14] *Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012), cited by Defendants, is distinguishable. There, plaintiff was pulled over for a traffic violation, smelled of alcohol, and actively resisted arrest. *Id.* at 628. He also refused to turn around and be handcuffed, posing more of an immediate threat to the safety of the officers. *Id.* at 629. Mr. Sampy, by contrast, was asleep in his parked vehicle when the officers encountered him, and he was immediately handcuffed. (SAC ¶ 21.)

established constitutional right to be free from retaliation for exercising [his] first amendment right to free speech").

## VI.    Mr. Sampy Has Stated a Claim for Bystander Liability

An officer is liable for failure to intervene when that officer:  (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act.  *Joseph*, 981 F.3d at 343.  Defendants do not dispute that Defendants Dugas, Colla, Jollivette, Darbonne, and Journet all were present at the scene, had reasonable opportunities to prevent the harm that occurred to Mr. Sampy, and chose not to act.  They simply allowed Defendant Rabb to pull Mr. Sampy's legs out from under him, so he could fall face-first on the concrete, and they allowed Defendants Reaux and Rabb to mount Mr. Sampy, placing their weight on his knee, back, neck, and head for several minutes.  (SAC ¶¶ 28, 30, 31, 33.)  Defendant Dugas even warned Mr. Sampy that he encountered the "wrong fucking crew" and smiled as Mr. Rabb drove his knee into Mr. Sampy's back, despite Mr. Sampy's wails of obvious pain.  (SAC ¶¶ 26, 33.)

In response, Defendants offer the sole conclusory argument that "the defendant officers did not violate Mr. Sampy's constitutional rights," so they "cannot be held liable under a failure to intervene or bystander liability theory."  (MTD at 27.)  For the reasons discussed above, however, Mr. Sampy's constitutional rights were, in fact, violated (*see supra* at 15-25), and the bystander officers' failure to intervene subjects them to liability, *see Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

## VII.    Mr. Sampy Has Stated a Claim for Vicarious Liability Against LCG

Mr. Sampy also alleges vicarious liability on the part of LCG.  (SAC ¶ 90.)  In Louisiana, courts apply a duty-risk analysis to determine whether to impose liability under Louisiana Civil Code art. 2315.  Under this analysis, plaintiff must prove: (1) the conduct in question was the

cause-in-fact of the resulting harm; (2) defendant owed a duty of care; (3) the requisite duty was breached by defendant; (4) the risk of harm was within the scope of protection afforded by the duty breached.  *Stroik v. Ponseti*, 699 So. 2d 1072, 1077 (La. 1997); *Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289, 292 (La. 1993); *Mart v. Hill*, 505 So. 2d 1120, 1120 (La. 1987). Defendants do not dispute that their conduct was the cause-in-fact of Mr. Sampy's harm, that LCG owed Mr. Sampy a duty of care, or that the risk of harm was within the scope afforded by the duty. Instead, they simply claim that the officers' conduct was "reasonable."  (MTD at 34.)

As Defendants concede, when making an arrest, police officers have the duty to act reasonably.  *Keller v. City of Plaquemine*, 700 So. 2d 1285, 1288 (La. App. 1 Cir. 1997) (citing *Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318, 322 (La. 1994)).  The reasonableness of an officer's actions depends upon the totality of the facts and circumstances of each case.  *Id.*  In evaluating officer reasonableness in using force to make an arrest, Louisiana courts consider seven factors:  (1) the known character of the arrestee; (2) the risks and dangers faced by the officers; (3) the nature of the offense involved; (4) the chance of the arrestee's escape if the particular means are not employed; (5) the existence of alternative methods of arrest; (6) the physical size, strength, and weaponry of the officers as compared to the arrestee; (7) the exigency of the moment.  *Kyle v. City of New Orleans*, 353 So. 2d 969, 973 (La. 1977).  In evaluating the *Kyle* factors, courts consider the information available to officers at the time of the arrest.  *Stroik*, 699 So. 2d at 1078.

Applying the *Kyle* factors to this case demonstrates that Defendant Officers acted unreasonably.  As discussed above, there were no risks or dangers faced by the officers, there was no chance of Mr. Sampy escaping, and there were no exigencies of the moment, as Mr. Sampy had been asleep in his car and was immediately handcuffed.  (*See supra* at 18-20.)  The nature of the offenses—both misdemeanors—weighs against a finding that the officers acted reasonably.  (*See*

31

*supra* at 18.)  Also, the physical size, strength, and weaponry of the seven officers far outweighs that of Mr. Sampy, who weighs 150 pounds and was unarmed.  (*See supra* at 18-19.)  There was nothing to indicate that Mr. Sampy's "known character" played any role in his arrest; he does not have any history of violent offenses.  And there were plenty of alternative methods of arrest at Defendant Officers' disposal; there was no need to resort to the brutal and excessive force used that morning.  *See, e.g.*, *LaBauve v. State*, 618 So. 2d 1187, 1191 (La. App. Ct. 1993) (finding officers' use of force unreasonable where arrest was for a non-violent crime, officers were clearly stronger than plaintiff, and officers could have clearly avoided throwing plaintiff to the ground); *Patton v. Self*, 952 So. 3d 874, 879, 880 (La. 2007) (rejecting arguments that vehicle was dangerous weapon when officers were standing next to driver's side door and finding that chance of escape no longer legitimate concern after plaintiff had been forcibly removed from her vehicle, other police were at the scene, and her vehicle was blocked by police units).[15]

Taking the totality of circumstances into account, Mr. Sampy has adequately stated a claim that LCG officers acted unreasonably in using force against him under Louisiana Civil Code art. 2315.  Because the officers acted unreasonably, LCG is vicariously liable for the conduct of its officers.  *See, e.g.*, *Deshotels v. Norsworthy*, 721 F. Supp. 2d 525, 537 (W.D. La. 2010); *Lewis v. Goodie*, 798 F. Supp. 382, 391 (W.D. La. 1991); *Braud v. Painter*, 730 F. Supp. 1, 9 (M.D. La. 1990).

---

[15] In addition to the *Kyle* factors all weighing against a finding of reasonableness on the part of the officers, Mr. Sampy has also alleged facts sufficient to show that the officers' conduct was objectively unreasonable for purposes of his excessive force claims.  (*See supra* at 17-21.)

## **CONCLUSION**

For the reasons set forth above, Mr. Sampy respectfully requests that the Court deny Defendants' motion to dismiss in its entirety.


Dated:  July 23, 2021                                         Respectfully Submitted,

                                                                            */s/Marcus B. Hunter*
                                                                     Janika D. Polk, T.A. (La. Bar. No. 27608)
                                                                     Lee B. Ziffer (La. Bar. No. 32783)
                                                                     Marcus B. Hunter (La. Bar No. 35177)
                                                                     KUCHLER POLK WEINER, LLC
                                                                     1615 Poydras Street, Suite 1300
                                                                     New Orleans, Louisiana 70112
                                                                     Telephone: (504) 592-0691
                                                                     Facsimile: (504) 592-0696
                                                                     jpolk@kuchlerpolk.com
                                                                     lziffer@kuchlerpolk.com
                                                                     mhunter@kuchlerpolk.com


                                                                     Marques S. Tracy (*pro hac vice*)
                                                                     Linda H. Martin (*pro hac vice*)
                                                                     FRESHFIELDS BRUCKHAUS
                                                                     DERINGER US LLP
                                                                     601 Lexington Avenue, 31st Floor
                                                                     New York, NY 10022
                                                                     Telephone:  (212) 277-4000
                                                                     Facsimile:  (212) 277-4001
                                                                     Marques.Tracy@freshfields.com
                                                                     Linda.Martin@freshfields.com


                                                                     Nora Ahmed (*pro hac vice*)
                                                                     AMERICAN CIVIL LIBERTIES UNION
                                                                     OF LOUISIANA
                                                                     P.O. Box 56157
                                                                     New Orleans, Louisiana 70156
                                                                     Telephone: (917) 842-3902
                                                                     Facsimile:
                                                                     Nahmed@laaclu.org


                                                                     ***Attorneys for Plaintiff Raynaldo Markeith
                                                                     Sampy, Jr***.