## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**RAYNALDO MARKEITH SAMPY JR**     **CASE NO.  6:19-CV-00580**

**VERSUS**                                          **JUDGE JUNEAU**

**JONATHAN PRICE RABB ET AL**     **MAGISTRATE  JUDGE  CAROL  B. WHITEHURST**

### REPORT AND RECOMMENDATION

Before the Court is Defendants'[1] Motion to Dismiss for Failure to State a Claim under F.R.C.P. Rule 12(b)(6). (Rec. Doc. 37). Plaintiff opposed the Motion (Rec. Doc. 45), and Defendants replied (Rec. Doc. 50). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Defendants' Motion be granted in part and denied in part.

### Documents and Evidence Considered

Ordinarily, in ruling on a Rule 12(b)(6) motion, the court is limited to the allegations of the complaint and any exhibits attached thereto; however, the court

---

[1]    Defendants  are  Jonathan  Rabb,  Asher  Reaux,  Ian  Journet,  Segus  Jolivette,  Michael Darbonne,  Jordan  Colla,  and  Lafayette  City-Parish  Consolidated  Government.  Plaintiff voluntarily dismissed his claims against Lafayette Parish Communications District.

may also consider documents attached to the defendant's motion if they are referenced in the complaint and central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). The court is also permitted to take judicial notice of public records as well as facts which are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011). The Fifth Circuit has also sanctioned consideration of certain documents which were attached to the plaintiff's opposition, where no party questioned the authenticity of the documents and the documents are sufficiently referenced in the complaint. *Walch v. Adjutant Gen.'s Dep't of Texas*, 533 F.3d 289, 294 (5th Cir. 2008).

Within these parameters, the Court shall consider the following documents and evidence in addition to the allegations within the pleadings:

- Affidavit of owner of Sid's One Stop (attached to the First and Second Amended Complaints at Rec. Doc. 8-1 and 23-1).

- Affidavit of Burglar Alarms and Security Co., Inc. (attached to the First and Second Amended Complaints at Rec. Doc. 8-2 and 23-2).

- May 5, 2018 medical report (attached to the First and Second Amended Complaints at Rec. Doc. 8-4 and 23-3).

- September 4, 2019 transcript of proceedings in Lafayette City Court (a public record attached to Defendants' Motion to Dismiss, without objection, at Rec. Doc. 37-2).

- May 5, 2018 LPD officers' body camera footage (attached to Defendants' Motion to Dismiss, without objection, at Rec. Doc. 37-3 and a public record introduced in the City Court proceedings. See Rec. Doc. 37-2).

## **Factual Background**

Plaintiff filed this 42 U.S.C. §1983 and §1988 suit in May 2019 following his arrest by several Lafayette police officers on May 5, 2018. (Rec. Doc. 1). The Court stayed the proceedings in June 2019 pending resolution of Plaintiff's criminal charges in Lafayette City Court. (Rec. Doc. 12). In September 2019, the Lafayette City Court adjudged Plaintiff guilty of operating while intoxicated (OWI), first offense, and simple battery of a police officer. (Rec. Doc. 37-2, p. 226-32). After watching the officers' body camera footage and hearing testimony of several officers on scene, City Court Judge Douglas Saloom found that Plaintiff was lawfully detained when he kicked an officer. (Id.) Following Plaintiff's unsuccessful appeal of the City Court conviction, this Court lifted the stay on these proceedings in

December 2020. (Rec. Doc. 15). Thereafter, Plaintiff filed a Second Amended Complaint.[2] (Rec. Doc. 23).

*Plaintiff's Allegations*

According to the Second Amended Complaint, several Lafayette Police Department ("LPD") officers responded to a 911 call that Plaintiff had driven into an ice machine at a convenience store. (Rec. Doc. 23, ¶18). Plaintiff alleges that he did not hit the ice machine, but that he was sleeping upright in his truck when Officer Darbonne approached and asked for his identification. (Rec. Doc. 23, ¶23). As Plaintiff was reaching in his pocket for his driver's license, Plaintiff alleges that Officer Dugas grabbed his arm, "forcibly snatched him out of his truck…and performed a straight-arm bar take-down, throwing Mr. Sampy face down onto the concrete parking lot." (Id.) Officers Dugas, Reaux, and Colla then handcuffed him. (Id.) Plaintiff alleges officers then dragged him, while handcuffed, to a police unit, where he alleges that Officer Dugas threw him onto the hood of a nearby police car. (Rec. Doc. 23, ¶25-26).

After Officer Dugas allegedly stated that Plaintiff had encountered "the wrong f**** crew," Officer Rabb allegedly pulled Plaintiff, who allegedly weighs 150 pounds, "by his legs out of the hands of Officers Dugas and Jolivette" and "face first

---

[2]     Hereinafter, the Court shall at times refer to the Second Amended Complaint as "the Complaint."

4

on the concrete parking lot." (Rec. Doc. 23, ¶28). Plaintiff alleged that he sustained a laceration on his chin requiring stitches and a chipped tooth. (Rec. Doc. 23, ¶28; see also Rec. Doc. 8-4). The Complaint next alleges that while Plaintiff was immobilized and handcuffed, Officer Rabb claimed that Plaintiff kicked backwards into his (Officer Rabb's) shin. Plaintiff states that this kick formed the basis for the simple battery of a police officer charge of which Plaintiff was ultimately convicted. (Rec. Doc. 23, ¶29).

Thereafter, Plaintiff alleges that Officer Reaux pushed Officer Rabb out of the way and "mounted" Plaintiff, placing his full body weight on Plaintiff's left knee, while Officer Rabb allegedly rested his entire body weight and knee on Plaintiff's neck. (Rec. Doc. 23, ¶30). Officer Rabb then allegedly moved his knee and weight to Plaintiff's head, pressing his face into the concrete. (Id.) Plaintiff alleges that the other defendant officers on scene did not intervene or stop Officers Reaux or Rabb. (Rec. Doc. 23, ¶31).

The Complaint alleges that Officer Reaux then got off Plaintiff and began questioning him regarding the contents of a cup in the truck. While the officers were searching the truck, Officer Rabb again allegedly "mounted" Plaintiff, placing his knees in Plaintiff's upper back. (Rec. Doc. 23, ¶32-33). Thereafter, DUI Officer Mitcham placed Plaintiff in his police unit and transported him to University Hospital for treatment. (Rec. Doc. 23, ¶35). Plaintiff alleges that Officer Mitcham

5

fabricated the cause of Plaintiff's injuries by advising hospital staff that Plaintiff "got in a fight while intoxicated…fell and hit the bottom of his chin on the concrete," and that the officer "found him at 4:45 a.m.…in a yelling argument with a friend." (Rec. Doc. 23-3).

### *Body Camera Footage and Officer Testimony*

Officer Reaux's body camera footage best depicts the incident. Together with the officers' testimony at the City Court proceedings, the following timeline unfolds: Officers were dispatched at 4:43 a.m. to Sid's One Stop in response to a vehicle crash involving a building or ice machine. (Rec. Doc. 37-2, p. 83; 110; 129; 206-08). Officer Reaux arrived at Sid's One Stop as Officer Darbonne was speaking with Plaintiff, who had been asleep seated in his truck.[3] The truck is seen parked in front and to the right of the ice machine. Though there appears to be a yellow barricade between the truck and ice machine, the bumper of Plaintiff's truck appears to be very near the ice machine. (Rec. Doc. 37-3[4]; 37-2, p. 60-61; p. 83).

According to officer testimony, Plaintiff's speech was slurred, he refused to step out of the vehicle upon Officer Darbonne's command, and he was attempting to start the truck as he was reaching into his left pocket. (Rec. Doc. 37-2, p. 18; 61-

---

[3]    The identities of the officers in the video were gleaned from the officers' testimony in the City Court proceedings at Rec. Doc. 37-2.

[4]    The video at Rec. Doc. 37-3 includes several video clips. All references to the video herein refer to Officer Reaux's body camera video.

62; 98-99). As Officer Darbonne opened the truck door, Officer Dugas shined a light inside. One of the officers told Plaintiff to not reach in his pockets as he was doing so. The video depicts Officer Dugas telling Plaintiff to get out and Plaintiff cursing the officers and yelling "wait" and "hold up." Officer Dugas then grabbed Plaintiff by the left arm and pulled him from the truck onto the ground, where the officers handcuffed him. As he was being handcuffed, Plaintiff continued to curse at the officers. (Rec. Doc. 37-3; 37-2, p. 18-19; 129).

The officers then brought Plaintiff to a stand as an officer began to read his Miranda rights. Plaintiff continued to curse at the officers and appeared to struggle against them as he was led to a police unit. Officer Dugas testified that Plaintiff was resistant in "buck[ing] his shoulders," tensing up, and using abusive and profane language. (Rec. Doc. 37-2, p. 19-20). One officer said, "You wanna kick?" as Plaintiff was leaned forward onto the unit's hood. Although the video is less than definitive, it appears as if Plaintiff's leg kicks towards the officers. Officer Rabb testified that he grabbed Plaintiff's left foot and brought it to his (Plaintiff's) "behind" as Plaintiff began to kick Officer Rabb with his right foot. (Rec. Doc. 37-2, p. 139). Plaintiff kicked Officer Rabb in the shin/knee. (Rec. Doc. 37-2, p. 87; 120; 129-30; 139). The officers then immediately brought Plaintiff from the hood onto the ground. An officer yelled, "Don't f*** kick!" Plaintiff then yelled at an

7

officer to get off his neck, as Officer Rabb asked, "Are you going to be still?" and tells him to quit kicking his legs. (Rec. Doc. 37-3).

The officers then asked Plaintiff if he ran into the building, if he had been drinking, and what was in the cup in his console. Plaintiff told the officers to go look. The officers proceeded to search the truck. The video and officers' testimony indicate that an officer may have smelled marijuana and located what initially appeared to be a blunt but was apparently later determined to be a cigar. (Rec. Doc. 37-3; 37-2, p. 43-45; 55; 62; 88; 104).

During the search, Plaintiff is seen lying face-down handcuffed on the concrete. At one point during the search, as Plaintiff was lying face-down, Officer Rabb abruptly reached towards Plaintiff and put his knee onto Plaintiff's upper back to hold him down. The video did not capture Plaintiff's actions in the seconds before and during that time as another officer involved in the search was blocking the view. (Rec. Doc. 37-3 at T09:52). Officer Rabb remained kneeling on Plaintiff until he was brought to standing and loaded into the unit, because, Officer Rabb testified, Plaintiff "was turning and trying to stand up." (Rec. Doc. 37-3; Rec. Doc. 37-2, p. 142-43). The incident from the time Officer Dugas grabbed Plaintiff from the truck until the time Plaintiff was loaded into the unit spans less than eight minutes.

Officer Rabb described Plaintiff as irate, violent, and aggressive as he was loaded into the unit and that he kicked the door "so hard that it was bowing out off

its hinges." (Rec. Doc. 37-2, p. 130). Officer Rabb testified that he opened the back door after Plaintiff kicked it and observed Plaintiff with his knee cocked in a kicking position. (Id.)

At some point after the search, Officer Mitcham, LPD ATAC[5] officer, arrived and conducted a field sobriety test. Officer Mitcham observed that Plaintiff was extremely upset, his speech was slurred, he smelled of alcohol,[6] and his eyes were red and glassy. (Rec. Doc. 37-2, p. 154-61). Officer Mitcham ultimately determined that Plaintiff had a blood alcohol level of .129. (Rec. Doc. 37-2, p. 165).

Following the criminal trial in City Court, Judge Saloom found that the officers' detention was appropriate and convicted Plaintiff of first offense OWI and simple battery of an officer. (Rec. Doc. 37-1, p. 212; 227-32). Plaintiff alleges that following his conviction in City Court, he was sentenced to 125 days of home incarceration, with 110 days suspended, a fine, community service, and probation. His appeals to the Louisiana appellate court and Supreme Court were denied. (Rec. Doc. 23, ¶36-37).

---

[5]     The Alcohol Traffic Action Campaign (ATAC) enforced the driving under the influence statute. (Rec. Doc. 37-2, p. 154).

[6]     In the video, Officer Mitcham tells Plaintiff that he did not smell alcohol. Officer Mitcham explained at the City Court trial that he did not smell alcohol until he got close enough to administer the Horizontal Gaze and Nystagmus Test. (Rec. Doc. 37-2, p. 160).

Plaintiff asserts §1983 claims for excessive force in violation of the Fourth and Fourteenth Amendments, claims for First Amendment retaliation arising from his right to question officers during the detention, and a Louisiana tort claim for intentional infliction of emotional distress, as well as vicarious liability of Lafayette City-Parish Government ("LCG").[7]

## Law and Analysis

### I.    Law applicable to Rule 12(b)(6).

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). Conclusory allegations and unwarranted deductions of fact are not

---

[7]    Plaintiff abandoned his previous §1983 and state law claims for unlawful arrest and false imprisonment and claims for violation of the Louisiana Constitution. Compare Rec. Doc. 8 and Rec. Doc. 23.

accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

## II.    Whether Plaintiff's claims are barred by *Heck v. Humphrey*

### A. Plaintiff's Fourth Amendment excessive force claim versus *Heck*.

Plaintiff's claim for excessive force is governed by the Fourth Amendment, which protects individuals from unreasonable seizures. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). Under *Heck v. Humphrey,* 512 U.S. 477 (1994), a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that "violation arose from the same facts attendant to the charge for which he was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or

called into question by a federal court's issuance of a writ of habeas corpus.'" *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008), quoting *Heck,* 512 U.S. at 486-87. "Although the *Heck* principle applies to §1983 excessive force claims, the determination of whether such claims are barred is analytical and fact-intensive, requiring [the court] to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Id.* Stated differently, the court should determine whether the plaintiff's excessive force claim is "conceptually different from his conviction…such that 'a successful suit on the former would not necessarily imply the invalidity of the latter.'" *Ballard v. Burton*, 444 F.3d 391, 400 (5th Cir. 2006), citing *Heck*.

Plaintiff was convicted of OWI and simple battery of a police officer. In *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996), the Fifth Circuit considered whether a successful suit for excessive force would call into question the validity of a battery of officer conviction. In *Hudson*, the plaintiff, who was convicted of felon in possession of a firearm and battery of an officer, later asserted §1983 excessive force and false arrest claims. *Id*. In finding that *Heck* barred the plaintiff's excessive force claims, the court reasoned:

> In Louisiana, self-defense is a justification defense to the crime of battery of an officer. To make out a justification defense, the criminal defendant charged with battery of an officer must show that his use of force against an officer was both reasonable and necessary to prevent a

forcible offense against himself. Because self-defense is a justification defense to the crime of battery of an officer, Hudson's claim that Officers Defillo, Hingle, and Lanasa used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer. This is true because the question whether the police applied reasonable force in arresting him depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) was justified, which, if it were, necessarily undermines that conviction.

*Id*., at 873 (citations omitted).

In *Arnold v. Town of Slaughter*, and cases cited therein, the issue was whether excessive force claims could conceivably invalidate underlying convictions for assault and/or resisting an officer. *Arnold v. Town of Slaughter*, 100 Fed.Appx. 321, 323 (5th Cir. 2004), discussing *Hainze v. Richards,* 207 F.3d 795, 799 (5th Cir.2000); *Sappington v. Bartee,* 195 F.3d 234, 237 (5th Cir.1999), *inter alia*. In those cases, as in *Hudson*, the degree of the arrestee's resistance was pertinent to both the convicted charge (assault/battery/resisting) and the question of excessive force. *Id*.

Plaintiff argues that *Heck* does not bar his excessive force claim, because he alleges the officers' excessive force occurred *after* the simple battery for which he was convicted. In other words, Plaintiff argues that the facts underlying his battery conviction are temporally distinct from his excessive force claims, as discussed by the Fifth Circuit in *Bush v. Strain*:

13

[A] § 1983 claim would not necessarily imply the invalidity of a resisting arrest conviction, and therefore would not be barred by *Heck,* if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim. Accordingly, a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance.

*Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).

See also *Arnold v. Town of Slaughter*, 100 F. App'x 321, 324 (5th Cir. 2004) (suggesting that claims that police used excessive force after the plaintiff stopped resisting arrest survive *Heck's* bar). Therefore, claims for excessive force occurring after Plaintiff ceased resistance are not barred by *Heck*. The question is thus one of timing. In that regard, the City Court observed the following as Plaintiff's criminal defense counsel was cross-examining Officer Rabb regarding the kick:

Q.   When his leg comes up, you're not behind it. And then you throw him –

A.   Yes – yes legs, legs are able to hinge, so he comes back and forward. So, when he comes back, I'm not there, but when he comes forward I am. Like you would in a kick.

Q.   And, so, then you put him to the ground – and then you kneel on him – on his neck.

A.   No.

***

Prosecutor:  I'm going to object to this line of questioning, it's not relevant to a DWI, this is more to – the merits of a civil suit.

The Court:   But he also was charged with simpl[e] battery, and, and it is directly related to that circumstance…

14

Prosecutor:  Judge, the State would argue that the battery has already occurred.

The Court:  …[I]t's all within the same span of thirty (30) seconds, where he's at right now. So, I'm going to allow [Plaintiff's defense counsel] the opportunity to ask these questions. Since it's directly within the timeline of the…alleged kicking…

(Rec. Doc. 37-2, p. 141-42).

The video shows and the City Court judge found that Plaintiff kicked Officer Rabb during the struggle during which Plaintiff was handcuffed against the hood of the police unit and then pulled onto the ground. Compare *Bush*, wherein the criminal court judge did not make a finding as to the duration of resistance, a necessary consideration for an excessive force claim. *Bush*, 513 F.3d at 499. It is obvious to this Court, as it was to City Court Judge Saloom, that the kicking and Plaintiff's resistance occurred simultaneously with the officers' actions of pulling Plaintiff from the hood onto the ground where he cut his chin. Therefore, the Court finds that any claims arising out of excessive force up to that moment are barred by *Heck*.

Less clear is whether excessive force claims arising from conduct thereafter (Officer Rabb's second instance of kneeling on Plaintiff during the search) are precluded. On one hand, the Court is bound by Judge Saloom's suggestion that Plaintiff's kicking and the officer's subsequent kneeling on him cannot be temporally separated. On the other hand, Judge Saloom's statements must be considered in the context of the criminal proceedings (whether Plaintiff was guilty

of OWI and whether he battered a police officer). Indeed, Judge Saloom explicitly did not consider any issue or argument relevant to Plaintiff's civil claims. (See e.g. Rec. Doc. 37-2, p. 103-104 *inter alia*). This Court will not at this stage of the proceedings draw the line between Plaintiff's last moment of resistance and Officer Rabb's allegedly excessive force. This is a question of fact, which is inappropriate for resolution upon a Rule 12(b)(6) motion to dismiss.

Thus, the Court finds that Plaintiff's claims arising out of officer conduct which commenced after Plaintiff ceased resisting (whenever the jury determines that to be) are not *Heck* barred. In any event, this point in time occurred after the officers brought Plaintiff from the hood of the unit to the ground. Therefore, the Court's remaining analyses are limited to officer conduct beginning at some point with plaintiff on the ground after the kick. The video evidence confirms the only conduct that could potentially be deemed excessive force is Officer Rabb's second instance of kneeling on Plaintiff's upper back during other officers' search of the truck (hereinafter, at times, referred to as "the final alleged use of force").

B. <u>Plaintiff's First Amendment retaliation claims versus *Heck*.</u>

A plaintiff claiming an officer violated his First Amendment rights cannot prevail unless he shows an absence of probable cause for the arrest. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019). The requirement to show probable cause necessarily calls into question the validity of Plaintiff's OWI and

simple battery convictions. See *Jenkins v. Town of Vardaman, Miss.,* 899 F. Supp. 2d 526, 535 (N.D. Miss. 2012); *Magee v. Reed*, No. CV 14-1554, 2021 WL 411449, at *5 (E.D. La. Feb. 5, 2021). Therefore, *Heck* must preclude Plaintiff's First Amendment claims.

Unlike the Fourth Amendment context discussed above, the Court finds that *Heck* bars *all* First Amendment claims. While the question in the Fourth Amendment excessive force analysis is a fact-intensive one of degree and timing of the plaintiff's resistance (which may vary throughout the encounter), the question in the First Amendment analysis is one of probable cause (a phenomenon which either exists or does not). Judge Saloom found that Plaintiff was lawfully detained until Officer Mitcham arrived and Plaintiff was formally arrested.[8] (Rec. Doc. 37-2, p. 230). *Heck* precludes claims that seek to second-guess such a finding. Hence, the Court finds that Plaintiff's First Amendment claims should be dismissed as *Heck*-barred.

---

[8]     Judge Saloom defined the encounter as a detention pursuant to investigatory stop rather than an arrest. See Rec. Doc. 37-2, p. 228-30. The Court appreciates no reason why *Nieves* should not apply in this case, regardless of whether the encounter is classified as a detention, requiring reasonable suspicion, or an arrest, requiring probable cause. See *Lopez v. City of Glendora*, 811 F. App'x 1016, 1019, fn. 7 (9th Cir. 2020) (assuming without deciding that *Nieves* would apply in a *Terry* stop case, implying that the plaintiff must show an absence of reasonable suspicion to prevail on a First Amendment retaliation claim).

### III.    Whether Plaintiff has stated a Fourth Amendment excessive force claim.

Having found that *Heck* does not preclude Plaintiff's excessive force claim based on the final alleged use of force, the Court next considers Defendants' merits challenge to Plaintiff's Fourth Amendment excessive force claim. Defendants also assert the defense of qualified immunity.

In order to state a claim for excessive force under the Fourth Amendment, the plaintiff must show that he was seized and that (1) he suffered an injury which (2) resulted directly and only from the use of force that was excessive to the need; and (3) that the force used was objectively unreasonable. *Flores,* 381 F.3d at 396. Defendants argue that 1) Plaintiff did not suffer an injury related to the final alleged use of force; and 2) Defendants are entitled to qualified immunity for Plaintiff's excessive force claims.

A. Whether Plaintiff suffered an injury from the final alleged use of force.

That Plaintiff sustained physical injury in the form of a chin laceration is undisputed; however, the relevant inquiry is whether Plaintiff sustained injury from officer conduct occurring after the kick while Officer Rabb held him to the ground. Defendants argue that Plaintiff's Complaint fails to allege such resultant injuries.

> [W]e do require a plaintiff asserting an excessive force claim to have "suffered at least some form of injury," *Jackson v. R.E. Culbertson,* 984 F.2d 699, 700 (5th Cir.1993). Furthermore, we have shaped our analysis so that we do not permit a cause of action for every contact between a citizen and a police officer:

18

> In just about every conceivable situation, some amount of force or contact would be too nominal to constitute a constitutional violation. When the force used is insufficient to satisfy the legal standard necessary for recovery, the amount of force is de minimis for constitutional purposes.
>
> *Ikerd v. Blair,* 101 F.3d 430, 434 (5th Cir.1996). In determining whether an injury caused by excessive force is more than de minimis, we look to the context in which that force was deployed. "[T]he amount of injury necessary to satisfy our requirement of 'some injury' and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances." *Id.*
>
> What constitutes an injury in an excessive force claim is therefore subjective—it is defined entirely by the context in which the injury arises.

*Williams v. Bramer*, 180 F.3d 699, 703–04 (5th Cir.), *decision clarified on reh'g,* 186 F.3d 633 (5th Cir. 1999).

Although the Complaint does not delineate which alleged injuries resulted from which alleged use of force, the Court finds that Plaintiff's allegations sufficiently allege injury sustained as a result of the final alleged use of force. Plaintiff alleges that he suffered from a herniated disc, dislocated shoulder, and mental and emotional distress with PTSD symptoms, each of which could conceivably have resulted from the final alleged use of force. (Rec. Doc. 23, ¶38; 43). Hence Plaintiff's claims do not fail under this prong of the analysis.

B. Whether the final alleged use of force was objectively unreasonable.

The Fifth Circuit summarized the Fourth Amendment reasonableness standard as follows:

As in other Fourth Amendment contexts, the "reasonableness" inquiry is objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."

"An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." "The excessive force inquiry is confined to whether the [officer or another person] was in danger *at the moment of the threat* that resulted in the [officer's use of deadly force]."

*Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (citations omitted).

In the cornerstone excessive force case of *Graham v. Connor*, the Supreme Court articulated that the test of reasonableness under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Defendants maintain that regardless of whether Plaintiff sustained a constitutional injury, Defendants are protected by qualified immunity. The Fifth Circuit set forth the applicable law as follows:

> When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. To discharge this burden, "a plaintiff must satisfy a two-prong test." "First, he must claim that the defendants committed a constitutional violation under current law." "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"

> *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194–95 (5th Cir. 2009) (citations omitted).

The court need not consider whether a constitutional violation occurred under the first prong when the facts support a finding that the defendant's actions were objectively reasonable under the second prong. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard,* 572 U.S. ——, ——, 134 S.Ct. 2012, 2023 (2014). Supreme Court

precedent does not require a case directly on point for a right to be clearly established; existing precedent must have placed the statutory or constitutional question beyond debate. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018), citing *White,* 580 U.S., at ——, 137 S.Ct. 541, 551 (2017). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

The Supreme Court held long ago that, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Since *Garner*, the Supreme Court has refined the legal test for excessive force; it is situation-specific. *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015). The court should not decide generally whether an "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id*., citing *Brosseau v. Haugen,* 543 U.S. 194, 199, (2004) (*per curiam*). Rather, the court must frame the legal inquiry in the context of the situation: "The correct inquiry…[i]s whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the "situation [she] confronted," which in that case was "whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight." *Id*.

22

The relevant inquiry in this case is whether Officer Rabb's conduct of kneeling on Plaintiff at the moment he was handcuffed and lying face-down on the concrete was reasonable under the circumstances. The facts show that this encounter began with a sleeping Plaintiff who officers reasonably believed was intoxicated and had possibly driven his truck into the ice cooler. The encounter quickly escalated when the sluggish Plaintiff did not comply with the officers' commands to get out of the truck and Officer Dugas pulled him onto the ground. Plaintiff was visibly straining against officers and cursing vehemently at them as he was handcuffed and brought to the hood of the unit where he continued to resist and kicked out at the officers. However, the Court emphasizes that this analysis must be limited to the time period after which Plaintiff is handcuffed on the ground and no longer resisting.

The video shows that after Plaintiff was initially handcuffed, brought to the hood of the unit and then dragged onto the ground, an officer yelled at him to stop kicking as Plaintiff simultaneously yelled for the officer to get off him. The officer then gets off as Officer Reaux and the other officers proceed to search the truck. The video then shows Officer Reaux searching the truck, during which time Plaintiff is seen lying face-down and handcuffed on the ground. At some point during the search, Officer Rabb appears to abruptly reach toward Plaintiff and then kneels on his upper back area, where he remained until Plaintiff was loaded into the police unit. (Rec. Doc. 37-2 at T09:52). The video is inconclusive as to whether Plaintiff

23

was resisting at that time; although, Officer Rabb testified that Plaintiff was trying to turn and stand up (Rec. Doc. 37-2, p. 143). Plaintiff cites several comparably factual cases in which officers' conduct was deemed not objectively reasonable. For instance, in *Hank v. Rogers*, the Fifth Circuit held: "[C]learly established law demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017), citing several cases.

At this motion to dismiss stage, the Court must consider the allegations and facts in the light most favorable to Plaintiff. Accordingly, the Court cannot say that Officer Rabb's conduct of kneeling on Plaintiff while he was lying handcuffed and face-down on the ground was objectively reasonable absent definitive evidence as to Plaintiff's level of resistance. Compare also *Alexander v. City of Round Rock* wherein the Fifth Circuit denied the officers' motion to dismiss, because the allegations showed that the plaintiff did not pose a threat of harm and had at most been passively resistant to the officer's commands to get out of the vehicle and answer questions. *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). There, as in this case, the officers had allegedly thrown the plaintiff on the ground, kneed him in the back, and pushed his face into the concrete. *Id*. The

24

Complaint alleges that "[d]uring the search of Mr. Sampy's truck, Officer Rabb again mounted Mr. Sampy with his knees firmly planted in Mr. Sampy's upper back[, and that a]s Mr. Sampy howled again in pain and protest, Officer Dugas can be seen smiling." (Rec. Doc. 23, ¶33). Taking these allegations as true, the Court finds that Plaintiff has stated a Fourth Amendment claim for excessive force based on Officer Rabb's kneeling on Plaintiff at the as-yet undetermined point which Plaintiff ceased resisting. This is not to conclude that Officer Rabb's conduct was objectively unreasonable or that Defendants are not entitled to qualified immunity. Rather, the case is not yet ripe for those determinations.

## IV. **Plaintiff's Fourteenth Amendment excessive force claim.**

Defendants next seek dismissal of Plaintiff's claims for alleged violations of his Fourteenth Amendment rights. The Fourteenth Amendment protects an individual's substantive due process, procedural due process, and equal protection rights. The core concept underlying due process is protection from arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). The Supreme Court has instructed that excessive force claims must be analyzed under the Fourth Amendment's reasonableness standard, rather than a substantive due process approach under the Fourteenth Amendment. *Graham v. Connor,* 490 U.S. at 395.

> While substantive due process applies to some police conduct, the Supreme Court has refused to look beyond the Fourth Amendment

when the police "seize" a suspect. A seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied.*"

*Mason v. Lafayette City-Par. Consol. Gov't,* 806 F.3d 268, 278 (5th Cir. 2015), citing *Lewis*, 523 U.S. at 843-45 and *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989).

The officers in this case intentionally handcuffed Plaintiff and held him on the ground, where he may or may not have continued to resist. Thus, Plaintiff's claim is governed by the Fourth Amendment, and his substantive due process claim fails as a matter of law. See *id.*

## V.   <u>Whether Plaintiff has stated any other claims.</u>

Defendants also move to dismiss Plaintiff's failure to intervene claim, state law claims for assault, battery,[9] and intentional infliction of emotional distress (IIED), and vicarious liability claims against LCG.

### A. <u>Failure to Intervene</u>

Plaintiff alleges that none of the other officers who were present during the encounter "made any effort to intervene or to calm the other officers' aggressive and unreasonable actions" or "to dissuade Officers Reaux and Rabb from their violent

---

[9] Defendants' brief includes unnecessary arguments seeking to dismiss purported state law claims for assault and battery (Rec. Doc. 37-1, p. 31); however, Plaintiff has not asserted any such claims. The Court instructs defense counsel to tailor future motions to address only relevant issues, particularly where the Court declined to grant Defendants' request to file a 56 page supporting memorandum—more than double the 25 page limit established by LR7.8. See Rec. Doc. 35..

assault of Mr. Sampy. "(Rec. Doc. 23, ¶24; 31). "[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013), citing *Randall v. Prince George's Cnty., Md.,* 302 F.3d 188, 204 (4th Cir.2002). Because the Court cannot entirely dismiss Plaintiff's claims for excessive force at this stage of the proceedings, the Court finds that Plaintiff has sufficiently alleged facts sufficient to show failure to intervene by some of the officers.

B. State law claim for IIED.

Defendants argue that *Heck* also bars Plaintiff's state law claims, because these claims share the same set of operative facts. Defendants' position that Heck bars state law claims arising out of the same factual basis as the plaintiff's conviction is supported by jurisprudence from other district courts within the Fifth Circuit. See e.g. *Robinson v. Lipps*, No. 6:18-CV-01062, 2021 WL 865986, at *9 (W.D. La. Mar. 5, 2021); *Collier v. Roberts*, No. CV 13-425-SDD-EWD, 2016 WL 3448607, at *6 (M.D. La. June 17, 2016). However, as discussed above, factual issues remain about whether Plaintiff had ceased resisting at the time of the final alleged use of force. Because Plaintiff's state law claim for IIED could conceivably arise out of that factual basis (rather than the earlier factual basis involving Plaintiff's kicking), this

claim survives Defendants' *Heck* challenge. See *Thomas v. Pohlmann*, 681 F. App'x 401, 409 (5th Cir. 2017) (Plaintiff's state law claims were not *Heck*-barred where the underlying facts occurred *after* the facts which supported the plaintiff's conviction.)

To prevail on his IIED claim Plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). The conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* See also *Muslow v. City of Shreveport*, 491 F. Supp. 3d 172, 199 (W.D. La. 2020).

Defendants argue that Defendants' conduct was reasonable, thereby precluding a finding of "extreme and outrageous." The Court declines to dismiss Plaintiff's IIED at this stage of the proceeding because issues remain about the reasonableness of the officers' conduct during the pertinent timeframe.

C.  Vicarious liability of LCG.

Plaintiff's final claim for relief, vicarious liability of LCG as the officers' employer, implies a viable underlying tort, in this case IIED.[10] Under Louisiana law, employers, such as LCG, are vicariously liable for the acts of their employees. *Deville v. Marcantel*, 567 F.3d 156, 174 (5th Cir. 2009). ("Municipalities do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer."). Because the Court declines to dismiss Plaintiff's IIED claim at this stage of the proceedings, Plaintiff's vicarious liability claims against LCG survive Defendants' Motion to Dismiss.

## Conclusion

For the reasons discussed herein, the Court recommends that the Motion to Dismiss filed by Defendants (Rec. Doc. 37) be GRANTED IN PART and DENIED IN PART. The Court recommends that the Motion be GRANTED insofar as Defendants seek to dismiss Plaintiff's 1) Fourth Amendment excessive force claim for any alleged use of force prior to the moment Plaintiff ceased resisting (whenever

---

[10]    "[A] municipality, may not be held liable under §1983 on a basis of vicarious liability." *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017), citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691, (1978). Rather, in the §1983 context, a municipality may be liable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* Plaintiff did not assert a *Monell* claim or allege any facts supporting an unconstitutional policy or custom.

the jury determines that to be); 2) First Amendment retaliation claim; and 3) Fourteenth Amendment claim. The Motion should be DENIED in all other respects.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 26th day of August, 2021.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**